Clyde **WHITE**, Petitioner,

v.

A. F. **DOWD**, Respondent.

Civ. No. 2305.

United States District Court
N. D. Indiana,
South Bend Division.

July 18, 1958.

---

Pro. se. and by Thomas P. Hoadley, Asst. Public Defender.

John Pushor, Asst. Atty. Gen. of The State of Indiana, for respondent.

GRANT, District Judge.

Petitioner is presently before this Court on his petition for a Writ of Habeas Corpus. Petitioner has shown that he has exhausted the remedies available to him in the State Courts of Indiana. Furthermore, it is the opinion of this Court that the record discloses that petitioner was denied certain fundamental constitutional rights in the State courts of Indiana.

Anson J. Hafer was tried in the Allen Circuit Court and convicted of first degree murder. From the record it appears that he shot and killed a filling-station attendant during a holdup of the station in the city of Fort Wayne, Indiana, almost twenty years ago.

The petitioner, Clyde White, was parked down the street from the filling station at the wheel of an automobile waiting for Hafer. Following the commission of the crime Hafer came back to the car and directed petitioner to drive away, telling him what he had done.

Petitioner demanded and secured a separate trial in the Allen Circuit Court on the charge of first degree murder in an attempt to commit the crime of robbery.

During the course of the Clyde White trial a police officer, Martin H. Kammeyer, appeared and was questioned as a witness. Officer Kammeyer testified that he and an Officer Smith had traveled to Rochester, Minnesota, to take Hafer into custody. Kammeyer stated that Anson Hafer had given a confession to the police while Hafer was in police custody in Dubuque, Iowa and that subsequently, at Fort Wayne, Indiana, portions of that confession had been read to Clyde White and White allegedly said "Those are facts." Later, over objection, the Court admitted State's Exhibit B (portions of Hafer's confession made in Dubuque which had been read to White) into evidence.

Hafer, the man who made this confession, was in State custody and was being held in the Allen County jail (located three blocks away from the petitioner's place of trial) at the time this confession was admitted into evidence against the petitioner. Anson Hafer was not produced in court as a witness, but, rather, a portion of his statement of confession was admitted into evidence over petitioner's objection and upon the basis of an identification of the statement by Officer Kammeyer. No opportunity was afforded this petitioner to confront his accuser, Hafer, or to cross-examine him.

The admission of State's Exhibit B into evidence is an instance of prejudicial error which is "shocking to the universal sense of justice". The greater portion of Exhibit B is composed of matters peculiarly within the knowledge of Anson Hafer. In point of fact, the Allen Circuit Court allowed parts of Hafer's confession dealing with events and conversations which transpired long after the criminal act had ended—and with which Clyde White had no connection and no knowledge whatsoever—to be admitted into evidence and read to

the jury. Later, these particular portions of the confession were stricken from the record by the Court and the jury was instructed to disregard them. However, that portion of Hafer's confession dealing with the events which happened inside the service station during the robbery and murder—while Clyde White was admittedly outside the station and down the street—was admitted into evidence and read to the jury. The Court held that White had made the confession his own when it was read to him and he said, "Those are facts." Prior to Clyde White's alleged confession by the words, "Those are facts", he confronted Anson Hafer in the Fort Wayne jail with the words, "You're wrong (Hafer). You know I didn't know anything about the stickup." At a much later time, however, White allegedly capitulated and agreed to Hafer's Dubuque confession.

During the cross-examination of Officer Kammeyer, counsel for White asked officer Kammeyer how Clyde White could possibly have any knowledge of the events which happened outside of his presence (and inside the filling station) and to which he allegedly confessed while being interrogated by the police. The officer answered, "I don't know, but knowing, being with him, he probably figured that was the correct answer."

Petitioner was convicted. Officer Kammeyer "probably figured" correctly. After long hours of interrogation Clyde White "probably figured" that his answer "Those are facts" was the answer the police were seeking, even though he faced Hafer and disavowed any knowledge of Hafer's intentions and although he was confessing to something of which he had no personal knowledge whatsoever.

Petitioner appealed his conviction to the Supreme Court of Indiana where the conviction was affirmed. White v. State, 219 Ind. 290, 37 N.E.2d 937.

The only effective remedy available to the petitioner was that of direct appeal. Petitioner exhausted this remedy when he carried his cause to the Supreme Court of Indiana.

The writ of error coram nobis is not an available remedy to the petitioner as the instant error was not unknown at the time of petitioner's trial, but, on the contrary, appeared on the face of the record. 3 American Jurisprudence at page 767.

More than twenty-four years ago, Mr. Justice Cardozo, in a case wherein the accused was denied the right to be present when the jury was taken to view the murder scene, wrote these words:

"Thus, the privilege to confront one's accusers and cross-examine them face to face is assured to a defendant by the Sixth Amendment in prosecutions in the federal courts (Gaines v. State of Washington, supra, at page 85 of 277 U.S. [81], 48 S.Ct. 468, 72 L.Ed. 793), and in prosecutions in the state courts is assured very often by the Constitutions of the states. For present purposes we assume that the privilege is reinforced by the Fourteenth Amendment, though this has not been squarely held.

" * * * privilege of confrontation * * * 'was intended to prevent the conviction of the accused upon depositions or ex parte affidavits, and particularly to preserve the right of the accused to test the recollection of the witness in the exercise of the right of cross-examination'." Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, at pages 106–107, 54 S.Ct. 330, at page 332, 78 L.Ed.2d 674.

In this same case, Mr. Justice Roberts, in a dissenting opinion, in which Mr. Justice Brandeis, Mr. Justice Sutherland and Mr. Justice Butler concurred, wrote as follows:

"A distinction has always been observed in the meaning of due process as affecting property rights, and as applying to procedure in the courts. In the former aspect the requirement is satisfied if no actual

injury is inflicted and the substantial rights of the citizen are not infringed; the result rather than the means of reaching it is the important consideration. But, where the conduct of a trial is involved, the guarantee of the Fourteenth Amendment is not that a just result shall have been obtained, but that the result, whatever it be, shall be reached in a fair way. Procedural due process has to do with the manner of the trial; dictates that in the conduct of judicial inquiry certain fundamental rules of fairness be observed; forbids the disregard of those rules, *and is not satisfied though the result is just; if the hearing was unfair."* (Emphasis supplied.) Snyder v. Commonwealth of Massachusetts, supra, 291 U.S. at page 137, 54 S.Ct. at page 344.

Also see, Wigmore on Evidence, V, at page 127:

"In the United States, almost all Constitutions have given a permanent sanction to the principle of confrontation, by clauses requiring that in criminal cases the accused shall be 'confronted with the witness against him' or, 'brought face to face' with them." (Citing Indiana: 1851, art. I, Section 13, "In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face."

Petitioner is now properly before this Court to urge the denial to him of one of the most sacred rights afforded by virtue of American citizenship: the right and privilege to confront one's accusers and cross-examine them face to face. This petitioner, for almost twenty years, has waged this fight to secure unto himself his constitutional rights. We hold that the trial accorded to the petitioner so many years ago was a sham and a deprivation of due process within the concept and meaning of the Fourteenth Amendment to the Constitution.

Petitioner's petition for a Writ of Habeas Corpus is hereby granted and petitioner is hereby ordered discharged from the custody of the respondent. However, to afford the State of Indiana the opportunity to proceed further in the prosecution of this matter, if such be deemed advisable, this Order will not be entered until July 25, 1958.