## WHITE *v.* STATE OF INDIANA.

[No. 27,591.   Filed December 9, 1941.]

*Thomas G. Moorhead* and *Russell Gordon*, both of Fort Wayne (*James P. Murphy*, of Fort Wayne, of counsel), for appellant.

*George N. Beamer*, Attorney General, *James K. Northam*, First Assistant Attorney General, and *Joseph O. Hoffmann*, Deputy Attorney General, for the State.

RICHMAN, J.—Appellant was convicted by a jury of first degree murder and sentenced to life imprisonment.

The indictment was in two counts, the first charging murder in an attempt to perpetrate a robbery and the second, murder with premeditated malice. The only error assigned is the overruling of his motion for a new trial and the only questions properly raised under such assignment are that the court erred in overruling his motion, made at the conclusion of the state's case, for a directed verdict, that the evidence is insufficient to sustain the verdict and that it is contrary to law.

There was no evidence of premeditated malice so the verdict must rest upon the first count.

The principal contention of appellant is that there was no evidence sufficient to prove the *corpus delicti* or appellant's connection with the crime other than, (1) his extra-judicial statements, and (2) the hearsay reports of extra-judicial statements of an accomplice, and that neither of these two kinds of evidence may be considered in determining the sufficiency of the evidence to sustain the verdict. Appellee insists that from independent evidence, including the testimony of appellant as a witness in his own defense, the jury might reasonably have drawn the inference that appellant was guilty of the crime charged in the first count. Both the *corpus delicti* and appellant's connection therewith may be proved by circumstantial evidence. *Hunt* v. *State* (1939), 216 Ind. 171, 23 N. E. (2d) 681; *Rosenberg* v. *State* (1922), 192 Ind. 485, 134 N. E. 856, 137 N. E. 53; 23 C. J. S., Criminal Law, § 916, p. 185. This court may search the record to affirm a judgment. *Breadheft* v. *Cleveland* (1915), 184 Ind. 130, 108 N. E. 5, 110 N. E. 662; *Dunham* v. *Jones* (1915), 184 Ind. 46, 110 N. E. 203. If such search reveals sufficient facts proved independently from the extra-judicial statements, we need not deter-

mine whether the *corpus delicti* may be established by hearsay evidence.

There is undisputed testimony that Asbury S. Bunting, the attendant at a filling station in Fort Wayne, died from a gunshot wound inflicted about three o'clock p. m. March 6, 1940, at his station. As he staggered out of the station, "he was hollering at somebody" and before he fell unconscious in the arms of a bystander he said, "I was shot." A man running down the street about half a block away jumped into an automobile which "pulled away at a high rate of speed." So much appears without resort to the statements of appellant or his accomplice. The *corpus delicti*, as respects this case, was that some one shot Bunting in the attempt to perpetrate a robbery, which this evidence alone probably does not establish because it fails to show the motive for the shooting.

But appellant, after the state had rested, took the witness stand. From his testimony we obtain the following. He was 32 years old, was divorced from his first wife by whom he had one child. He remarried September 11, 1939. At the age of 18 he was convicted in Allen County for "vehicle taking" and was convicted the second time in Whitley County on a similar charge. He escaped from the Indiana Reformatory, secured possession of an automobile stolen in St. Louis, with his first wife drove from there to Bowling Green, Ohio, where with a gun in his possession he robbed a filling station. He was apprehended, pleaded guilty and served a term in the Ohio penitentiary from some time in 1929 until December 10, 1936, when he was taken to the Indiana Reformatory, from which he was released May 24, 1939. Some time later in the city court in Fort Wayne he pleaded guilty to stealing gaso-

line. He met Anson Hafer in the reformatory where they as prisoners were working in the same shop prior to his escape from the institution.

From the first of June, 1939, until October thereafter appellant worked at odd jobs in Fort Wayne. On one of those jobs he worked with Hafer for the same employer. Hafer got him the job. Later, appellant secured employment, at which he was engaged the day of the crime, selling used automobiles. While so employed he had Hafer with him in several different cars which he said Hafer was talking of purchasing. During this interval he told Hafer on one occasion to stay away from his home.

On the day in question appellant sat with his wife, who was employed, while she ate lunch at a restaurant, then went home and got his own lunch and drove back to the corner of Calhoun and Murray streets where Hafer called to him, asked where he was going and said, "he would like to take a little ride." After procuring three gallons of gas they drove together on Broadway to the outskirts of the city. At the corner of Oakdale and Broadway they passed a filling station where "as I made that turn east there he (Hafer) made a remark to me that there would be a good filling station for him to stick up." Appellant admitted that he knew what was "entailed in a filling station stickup." Within ten minutes thereafter, they crossed Calhoun street at Masterson where Bunting's filling station was located and at the alley beyond the corner Hafer requested appellant to stop, saying "that he wanted to go back and get that guy, and for me to wait for him, which I did." Appellant moved his car to permit a truck to pull in the alley. When Hafer returned appellant held the car door open to let him in. Hafer said, "All right, let's go, which I did." At Clinton street,

where there is a stop sign, appellant was about to stop when Hafer said, "Go on, I had to shoot an old man back there." They separated at Lafayette and Main streets. Two nights later while appellant was at home sick Hafer went to appellant's home, asked for money to get away, did not receive it from appellant but stole his wife's pocketbook. These events were not reported to police authorities until after appellant's arrest some time in April.

At the police station appellant made a written statement concerning the making of which he was interrogated while on the witness stand. The questions and answers were as follows:

"Q. What did you tell them that does not appear in that statement, that differs?

"A. On this one question they asked me if I knew that he was going back there to stick that place up. I told—Mr. Smith was the one that asked me the questions. I told Mr. Smith at the time that that was a very hard question for anybody to answer 'Yes' or 'No.' And he wanted to know why it would be a hard question to answer 'Yes' or 'No.' I explained it to him then that the man said he wanted to go back there and get that fellow. I told him then that that could mean any one of a number of things. That it didn't necessarily mean that the man was going back to stick the place up; that I wouldn't necessarily know that. But he told me he wanted that question answered 'Yes' or 'No.' I did answer the question, 'Yes.' I don't deny that I answered the question 'Yes,' but at the same time I had explained to him why I didn't feel like answering the question 'Yes' or 'No.'

"Q. Did you read over the statement before you signed it?

"A. I did. I read the statement."

There was other plausible explanation by appellant of all the circumstances surrounding the crime. But in

considering the sufficiency of the evidence to sustain the verdict we look to that evidence only which tends to support the conclusion reached by the jury. And where circumstantial evidence is of such character that two inferences may reasonably be drawn therefrom, one consistent with innocence, the other with guilt, we will treat such evidence as supporting the latter inference in order to sustain the verdict. *Rosenberg* v. *State, supra; Gears* v. *State* (1932), 203 Ind. 380, 180 N. E. 585.

We think a jury might reasonably have drawn the inferences from this evidence that Hafer intended to "stick up," that is rob at the point of a gun, the attendant at this filling station, that appellant knew his purpose and was willing to assist in this unlawful enterprise by waiting with car door open to aid in the escape and that Hafer's shooting of Bunting occurred in the attempt to perpetrate the robbery, which inferences, with the undisputed fact that Bunting died from the gunshot wound, establish not only the *corpus delicti* but appellant's guilt.

Under § 9-102, Burns' 1933, § 2243, Baldwin's 1934, one who aids or abets in the commission of a felony may be convicted and punished as a principal. It is immaterial that appellant did not know nor expect that Hafer would shoot in the attempt at robbery. They were together engaged in the commission of an unlawful act and he is liable *criminaliter* for that which Hafer did in furtherance of the unlawful common object. *Breaz* v. *State* (1938), 214 Ind. 31, 13 N. E. (2d) 952.

We need not further notice the extra-judicial statements of appellant and Hafer than to say that their cumulative effect is to sustain the verdict.

By proceeding with the introduction of evidence after his motion for a directed verdict was overruled, appellant waived the motion and alleged error, *Bowen*  v. *State* (1920), 189 Ind. 644, 651, 128 N. E. 926, 929, and "authorized the court to determine the sufficiency of the proof from the whole case." *Hunt* v. *State, supra.*

No point is made under the assignment that the verdict is contrary to law other than it is not sustained by sufficient evidence.

Judgment affirmed.

NOTE.—Reported in 37 N. E. (2d) 937.