MOBLEY ET AL. *v.* STATE OF INDIANA.

[No. 28,394. Filed April 29, 1949. Rehearing denied June 3, 1949.]

Emmert, J., concurs in result with opinion.

Gilkison, J., concurs.

*Norval K. Harris,* of Sullivan, and *Oscar Hagemier,* of Indianapolis, for appellant.

*Cleon H. Foust,* Attorney General, *Frank E. Coughlin,* First Deputy Attorney General, and *Merl M. Wall,* Deputy Attorney General, for appellee.

YOUNG, J.—Appellants were indicted together and charged with the second degree murder of a three year old child. The record presents a shocking picture of cruelty and maternal unconcern.

The child was the daughter of appellant Mobley. The children's father had been in the military service and was killed by the accidental discharge of a pistol. In February of 1947, Mrs. Mobley was living with her mother, brother, sister and daughter, Alice, in a house upon which she had made a down payment of $500 received by her on account of the death of her husband. It was a two room house, with a combination kitchen and livingroom and a bedroom and bath. She met the appellant Fagan in a tavern and he went to her home to live on February 14, 1947, sleeping at first with her brother. Within a very brief time the mother, brother and sister of appellant Mobley moved out and the appellants continued to live there together. They were not married, but they and the child occupied the only bedroom in the house. On the evening of March 25, 1947, the child became unconscious and was taken to a hospital where it died a few hours later.

Appellants were arrested, indicted, tried, convicted and sentenced to life imprisonment. Each of the appellants filed a separate motion for a new trial. Both were overruled and these were the only errors assigned. Under these assignments the propriety of admitting in evidence statements of the

defendants is suggested to us. These statements were in question and answer form, taken by a shorthand reporter and transcribed. There was no showing of any kind that the statements were procured by fear or violence or coercion of any kind. No objections were made by either appellant to the introduction in evidence of Fagan's statement. Fagan objected to the introduction in evidence of Mrs. Mobley's statement and his objection was sustained. At the time the court stated that her statement would not be binding upon Fagan and should not be considered as evidence of his guilt. The court stated further that the statement would not be admitted as a whole. Later it was admitted in part without objection by Fagan. Mrs. Mobley objected to her statement on the ground that she had not signed it and upon the ground that it was hearsay. It has not been signed but the reporter testified to the questions asked her and her replies thereto. The fact that the statement was not signed made no difference. What she said was proved and constituted an admission on her part. It was not objectionable under the hearsay rule.

Mrs. Mobley also asked for a separate trial, which was denied her. She claimed this as error. Whether a separate trial should be granted was in the sound discretion of the court. Section 9-1804, Burns' 1942 Replacement; *Neal* v. *State* (1938), 214 Ind. 328, 333, 14 N. E. 2d 590. No abuse of discretion was shown.

Mrs. Mobley also asked for a directed verdict at the conclusion of the State's evidence, which was denied and she urges this as reversible error. After her motion for a directed verdict was denied she went ahead and offered evidence on her own behalf and by doing so she waived error, if any, in overruling her motion and no question upon that ground is

before us for consideration. *White* v. *State* (1941), 219 Ind. 290, 297, 37 N. E. 2d 937.

The only question seriously presented, either by brief or at oral argument, has to do with the sufficiency of the evidence. We will, therefore, look to the record to see if the evidence sustains the verdict of the jury and in doing so we need look only to that evidence which tends to support the conclusion reached by the jury, *White* v. *State* (1941), 219 Ind. 290, 295, 296, 37 N. E. 2d 937, and determine whether there is any evidence upon which the jury could have found as it did. We may not weigh conflicting evidence or conflicting inferences therefrom.

As to the child's condition, we need not invoke this rule. That the child was beaten and bruised literally from its head to its feet is uncontradicted. There was an autopsy and three doctors testified without any conflict in their evidence as to the child's condition. The coroner and the physician who made a postmorten examination of the body and a third physician who was present at the hospital and attended the autopsy all testified that there were discolored bruises on both cheeks and several lacerations; there was a small laceration at the top of her nose; there were two bruises on the forehead, both arms showed large bruised areas extending from the shoulder to the wrist; there were a number of bruises on both arms near the shoulders about the size of finger tips which one of the medical men said looked as if made by grasping the child by the shoulders and shaking; there was a small abrasion on the upper surface of the left hand; the abdomen showed two small lacerations with extravasation of blood in the subcutaneous tissue and muscle. The groins and pubic regions and the inner aspects of both thighs, and parts of the legs, showed many bluish discolored, swollen, bruised areas.

There were bruises and abrasions on the back. Both buttocks were badly bruised. Upon opening the cranial cavity, clotted and liquid blood was found, and the brain appeared to be somewhat swollen. There was no evidence of foreign bodies in the lungs other than blood and mucus. All three doctors testified that Alice Mobley died from cerebral injury as the result of external violence. They all testified that the cerebral injury could have been caused by violence to any part of the body, the force of which could be transmitted through the spine to the brain. It was not necessarily caused by a blow on the head. This undenied condition of the body, together with the fact that the child had been in the exclusive custody of the appellants for several weeks and had gone to the hospital directly from them, was almost conclusive evidence to sustain the verdict against one or both defendants.

In addition to the uncontradicted evidence of the condition of the body, there was evidence as to the manner in which the bodily injuries were incurred from which the jury could have inferred that violence by both of the appellants caused the little girl's death. There was evidence from which the jury reasonably could have found the following facts. Over a period of at least two weeks the child had been mistreated by both appellants. Both often spanked and beat her. There were cigarette burns on its left hand and right buttock. In Mrs. Mobley's presence Fagan whipped the child across the abdomen and down the legs with a metal pancake turner. In her presence he beat the child over the back with a military belt until he brought blood. He beat it on the bottom of its feet with the belt; he directed it to run to the bathroom and as it started to run he pushed it and it fell and hit its head on the cement floor of the house. He shook it violently. He

tossed it in the air and caught it as it came down. There was evidence that on one of these occasions he failed to catch it and the child's head hit the concrete floor. He made it jump up and down flat footed on the floor. These were not isolated occurrences, but happened repeatedly and came to be a part of a more or less established course of conduct, to which Mrs. Mobley by her presence and failure to stop it, became a party.

Mrs. Mobley spanked the child frequently, and without real excuse beat it with the pancake turner. She did this at the direct suggestion of Fagan. On the day of the child's death she had spanked it at different times with her hands and the pancake turner. She told a deputy sheriff that she whipped the baby until it became unconscious. Later she denied this and said she was trying to protect Fagan. On the evening of the child's death she was ironing in the combination kitchen and living room. Fagan was "playing" with the child in that room, tossing it up and down and catching it. The child seemed to choke and Fagan shook it violently. While he was shaking it, "its head began to get wobbly" and it became unconscious. He thereupon handed it to its mother and she took it next door for advice from her sister-in-law. They attempted to obtain a doctor, without success. They obtained a taxicab and took it to a hospital, where it died a few hours later. She stated that the reason Fagan mistreated the child was that he hated her (the child) because she belonged to another man. She also stated that she was afraid Fagan would leave her and that she had sacrificed the welfare of her child for the companionship of Fagan and that she knew she was guilty. Fagan told the officers he struck Alice because he was jealous of her. There was also evidence of active negotiations in which both Fagan and Mrs. Mobley participated looking to the adoption

of the child by an army sergeant in Terre Haute. From all this testimony the jury may well have inferred the child was interfering with the life of the appellants and that they desired to be rid of her.

In the light of the testimony of the doctors that a blow on the head was not necessary to cause the cerebral hemorrhage, which resulted in the child's death, they could well have inferred that the spanking and beating of the child by its mother contributed to cause the injury.

Even if the jury had not believed that violence by the mother caused or helped to cause the child's death, it reasonably could have found that she aided and abetted Fagan in causing it. We have a statute which provides that every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command or otherwise procure a felony to be committed, may be charged by indictment or affidavit, and tried and convicted in the same manner as if he were a principal. Section 9-102, Burns' 1942 Replacement; *White* v. *State* (1941), 219 Ind. 290, 296, 37 N. E. 2d 937. It is true that the mere presence of an accused at the time and place of the crime alleged is not sufficient to make such accused guilty, but if from the facts and circumstances surrounding defendant's presence at the time and from defendant's conduct it appears that defendant's presence did in fact encourage someone else to commit the act, guilt may be inferred. *Schaffer* v. *State* (1930), 202 Ind. 318, 325, 173 N. E. 229.

Actively to countenance and support the doing of a criminal act by another is to encourage it, within the meaning of the aiding and abetting statute last above referred to, *Guetling* v. *State* (1926), 198 Ind. 718, 724, 153 N. E. 765, and a person en-

couraging the commission of a felony is guilty as a principal and subject to prosecution and conviction the same as the principal, under the statute last referred to. *Simpson* v. *State* (1925), 195 Ind. 633, 637, 146 N. E. 747. While it is true that the mere presence of a person at the scene of a crime is insufficient to constitute him a principal therein, in the absence of anything in his conduct showing a design to encourage, incite, aid, abet or assist in the crime, the trier of the facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom that he assented to the commission of the crime, lent his countenance and approval thereto and thereby aided and abetted it. *People* v. *Smith* (1945), 391 Ill. 172, 62 N. E. 2d 669, 673; *State* v. *Fox* (1904), 70 N. J. L. 353, 57 Atl. 270. This, it seems to us, is particularly true when the person who fails to interfere owes a duty to protect as a parent owes to a child. See *Thornton* v. *State* (1904), 119 Ga. 437, 46 S. E. 640, 641-2.

It has also been held that the presence of one at the commission of a felony and companionship with another engaged therein, and a course of conduct before and after the offense, are circumstances which may be considered in determining whether aiding and abetting may be inferred. 22 C. J. S., Criminal Law, § 88, p. 161; *State* v. *Bishop* (1927), 317 Mo. 477, 296 S. W. 147, 149; *Thornton* v. *State, supra; People* v. *McElroy* (1891), 14 N. Y. S. 203; *State* v. *Fox, supra; State* v. *Jarrell* (1906), 141 N. C. 722, 53 S. E. 127.

That there was evidence to sustain the verdict in this case to us seems clear.

The judgment is affirmed.

Emmert, J., and Gilkison, J., concur in result with opinion.

NOTE.—Reported in 85 N. E. 2d 489.

## CONCURRING OPINION

EMMERT, J.—The facts have been clearly stated by my brother, Young, and from the evidence, circumstantial and direct, the jury had the right to find that both appellants had conspired to cause the child to sicken and die. Here we find a series of malicious assaults and batteries, executed as a part of a scheme, plan and design, the natural and probable consequences of which would be the illness and death of the victim. The acts of abuse grew out of wicked and corrupt motives, and were attended by such circumstances "as carry in them the plain indication of a heart regardless of social duty, . . . fatally bent on mischief." *Harris* v. *State* (1900), 155 Ind. 265, 271, 272, 58 N. E. 75. Malice, which is an essential element of murder in the second degree, was properly implied from these deliberate and cruel acts against a young and helpless child. *Harris* v. *State, supra.*

Where the purposes of a criminal conspiracy have been executed and accomplished, all the conspirators are guilty of the ultimate crime as committed. *Archer* v. *State* (1886), 106 Ind. 426, 7 N. E. 225; *Waldon* v. *State* (1914), 182 Ind. 112, 104 N. E. 300; *Peats* v. *State* (1938), 213 Ind. 560, 12 N. E. 2d 270; *Pinkerton* v. *United States* (1946), 328 U. S. 640, 90 L. ed. 1489, 66 S. Ct. 1180.

The jury had the right to find that the appellants intended the natural and probable consequences of their acts. *Newport* v. *State* (1895), 140 Ind. 299, 39 N. E. 926. When the specific results of a conspiracy have

346

been accomplished, the conspirators are presumed to have intended the natural consequences of their acts. *United States* v. *General Motors Corp.* (1941), 121 F. 2d 376. Therefore the jury had the right to find that the killing was done purposely, which is an essential element of murder in the second degree as defined by § 10-3404, Burns' 1942 Replacement.

Because the evidence was sufficient to justify the jury in finding the death of the child was caused by both appellants acting purposely and with malice, the judgment should be affirmed.

GILKISON, J., concurs in this opinion.

NOTE.—Reported in 85 N. E. 2d 489.