William Henry COKER,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–979A263.

Court of Appeals of Indiana,
Third District.

Feb. 4, 1980.

Rehearing Denied April 22, 1980.

Ellen S. Podgor, Crown Point, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

Appellant William Henry Coker was charged with the offense of dealing in a narcotic drug, to-wit: heroin. The jury found him to be guilty as charged and assessed a penalty of nine (9) years imprisonment and a fine of one thousand dollars ($1,000). The trial court ultimately sentenced Coker to five (5) years imprisonment.

The facts in this case are as follows. In September 1977, Carl Hobbs was employed by the Drug Enforcement Administration (DEA) as a confidential informant. On September 23, 1977, acting under the direction of police officers, Hobbs contacted Roderick "Buddy" Hicks and made arrangements to purchase heroin from Hicks at Hobbs' residence in Gary, Indiana. Hobbs was strip searched for contraband, fitted with a radio transmitter and given money to purchase the drug. He was under police observation from the time he was searched until he entered his residence. His conversation while inside the residence was monitored by the radio transmitter. Approximately fifteen minutes after Hobbs had arrived at his residence, Coker and another person Hobbs knew as "Red" arrived in an automobile driven by Coker. Hobbs knew Coker from prior drug transactions and knew that Coker had worked for Hicks in the past. Coker introduced "Red" and informed Hobbs that Hicks had sent him. Hobbs, protesting that Hicks should have come, gave Red the money and received in return a small tinfoil packet of a brown powder containing 5.1% heroin. Coker stood about a foot away from the transaction. Afterwards Coker and Red left together in the automobile driven by Coker. Hobbs was picked up outside the residence by a Gary police officer and taken to the DEA office.

Coker first contends that the trial court erred in admitting State's exhibits 1 and 2 into evidence over his objection that a proper chain of custody had not been established. These exhibits consisted of the tinfoil packet and the envelopes and vial in which the police had placed the packet of heroin.

The purpose of establishing a chain of custody concerning seized evidence

is to show a complete chain of possession from the original receiver to the final custodian and thus lay a proper foundation connecting the evidence with the accused. *Williams v. State* (1979), Ind., 387 N.E.2d 1317. Chain of custody is an indirect method of proving the identity and integrity of evidence by showing its continuous whereabouts and thus negating any substantial likelihood of substitution or alteration. *Johnson v. State* (1977), 267 Ind. 415, 370 N.E.2d 892. While the state is required to prove a chain of custody, it is not required to exclude every remote possibility of tampering. *Williams, supra; Mendez v. State* (1977), 267 Ind. 309, 370 N.E.2d 323; *Kolb v. State* (1972), 258 Ind. 469, 282 N.E.2d 541. Where the state has introduced evidence which strongly suggests the whereabouts of an exhibit at all times, such evidence will be considered as sufficient for chain of custody purposes. *Mendez, supra.*

The record before us reveals that Hobbs, who had been under police observation at all times except while in his home, surrendered the tinfoil packet of heroin to Officer Guzman at the DEA office. Guzman and another officer conducted a field test on the substance in the packet which indicated that the powder contained heroin. The foil was then dated and initialled by Guzman and placed inside an envelope inscribed with the date, a case number, and Guzman's signature. The envelope was heat sealed by Guzman and hand delivered to the evidence custodian at the DEA laboratory in Chicago. Robert Krefft, a DEA forensic chemist, testified that all evidence is kept in the evidence vault until removed for testing. Only the evidence custodian, the supervisor and the laboratory director have access to the vault. Krefft obtained the sealed envelope from the evidence custodian. He weighed it, cut open the envelope and analyzed the powder inside. After the analysis, Krefft initialled and dated the foil packet and signed and dated an envelope in which a vial containing the heroin was placed. He placed all the items inside the envelope prepared by Guzman, resealed it and initialled and dated the envelope. This envelope was then returned to the evidence custodian and the vault. Guzman picked up the envelope from the laboratory sometime before trial.

■ Thus we have evidence showing a chain of possession from the original receiver, Hobbs, to the final custodian, Guzman. The evidence strongly suggests the whereabouts of the exhibit at all times, either in the possession of an individual or in a locked vault. Therefore, a sufficient chain of custody was established to insure the identity and integrity of the exhibits. The trial court did not err in admitting the exhibits into evidence.

■ Coker next urges that the trial court committed reversible error in allowing the admission of testimony concerning his prior criminal activities.[1]

It is well settled law that evidence of criminal activities apart from the specific crime charged is inadmissible on the question of guilt if the evidence is irrelevant or produced merely to show the defendant's unsavory character or tendency to commit certain types of crimes. *Kerlin v. State* (1970), 255 Ind. 420, 265 N.E.2d 22; *Meeks v. State* (1968), 249 Ind. 659, 234 N.E.2d 629. The evidence will also be excluded if it misleads the jury or serves no purpose other than to prejudice the

---

1. The testimony objected to is as follows:

"Q. I believe you testified that you knew the defendant, Mr. Coker, prior to September 23rd, '77?
A. Yes.
Q. Would you please explain how you knew Mr. Coker?
A. I met him during drug transaction in March of '77. We got to know each other since then. He started working for the same person I was working for, Rodrick Hicks.
Q. So he was working for Hicks the same time you were?
A. No, after I started working for him.
Q. And what was the nature of the drug transaction when you first met Mr. Coker?
A. He was purchasing drugs from me.
Q. From you?
A. Yes."

defendant in the eyes of the jury. *Lawrence v. State* (1972), 259 Ind. 306, 286 N.E.2d 830. However evidence of other criminal activity may be admitted to show intent, purpose, identification or common scheme or plan. *Cobbs v. State* (1975), 264 Ind. 60, 338 N.E.2d 632, 633. *Manuel v. State* (1977), 267 Ind. 436, 370 N.E.2d 904, at 905, 906. Furthermore, such evidence is admissible when the crime charged has been established and the motive or guilty knowledge of the accused is an issue. *Van de veer v. State* (1971), 256 Ind. 509, 269 N.E.2d 865; *Meeks v. State* (1968), 249 Ind. 659, 234 N.E.2d 629.

■ The evidence of Coker's prior activities tends to show his guilty knowledge. An inference can be drawn from the evidence that Coker knew why Hicks had sent Red to Hobbs, i. e., that the purpose of the meeting was to complete a drug transaction. Such knowledge can be inferred from the prior relationship between Hobbs, Coker and Hicks. The trial court did not err in admitting this evidence.

Coker also alleges that the evidence is insufficient to sustain the conviction inasmuch as there is no evidence to show that he had possession of the drug or that he intended to deliver it to Hobbs. He contends that the evidence shows only "mere presence" at the scene of the drug transaction.

■ When reviewing the sufficiency of evidence, this court considers only the evidence most favorable to the state along with all reasonable inferences to be drawn therefrom in order to determine whether there is sufficient evidence of probative value from which a reasonable trier of fact could have found the existence of each element of the crime beyond a reasonable doubt. *Baum v. State* (1976), 264 Ind. 421, 345 N.E.2d 831; *Clark v. State* (1976), 265 Ind. 161, 352 N.E.2d 762. We will not weigh the evidence nor determine the credibility of the witnesses. *Robinson v. State* (1977), 266 Ind. 604, 365 N.E.2d 1218; *Cowherd v. State* (1970), 253 Ind. 693, 256 N.E.2d 679.

■ While the state must sustain its burden of proof on each element of the offense, the elements may be proven by circumstantial evidence and the inferences therefrom. *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841; *Kondrup v. State* (1968), 250 Ind. 320, 235 N.E.2d 703. Although presence alone is not sufficient to sustain a conviction, "the trier of fact may consider such presence in connection with the circumstances in determining the guilt of the party involved. Even if there were no active participation in the commission of the crime, failure to oppose it at the time, companionship with another engaged therein, and a course of conduct before and after the offense are such circumstances as may be considered in determining whether aiding or abetting may be inferred." *Cotton v. State* (1965), 247 Ind. 56, 211 N.E.2d 158, 161. *See also Mobley v. State* (1949), 227 Ind. 335, 85 N.E.2d 489; *Mattingly v. State* (1952), 230 Ind. 431, 104 N.E.2d 721.

■ The evidence, as set forth above, shows more than mere presence. Although Coker did not actively participate in the transfer of the drugs and the money, he was not an innocent bystander. Coker had driven Red to Hobbs' residence. He introduced Red to Hobbs and paved the way for the completion of the transaction by verifying that Hicks had sent Red. As was stated before, a reasonable inference can be drawn that Coker knew that Hicks had sent Red for the purpose of delivering the heroin. After viewing the transaction, Coker did not disassociate himself from Red but left with Red in his own automobile. From this evidence and the reasonable inferences therefrom the jury could find beyond a reasonable doubt that Coker was guilty of dealing in a narcotic drug.

■ Coker next argues that the jury verdict which assessed his penalty at nine years imprisonment and a one thousand·dollar fine constituted cruel and unusual punishment on the facts in evidence. The argument presents nothing for review. There was no objection to the form of verdict. Nor was Coker sentenced upon the recommendation. Instead the court imposed the

minimum five year determinate sentence permitted by the statute governing the offense, IC 35–24.1–4.1–1 (repealed). *See Grzesiowski v. State* (1976), Ind.App., 343 N.E.2d 305. Since no exception has been taken to the judgment imposed, and the portion of the verdict imposing punishment was not applied, no error is available to Coker.

Coker also contends that the trial court erred in failing to give an instruction on a lesser included offense of possession. It does not appear from the record that Coker tendered any such instruction. He has not included in his appellate brief a verbatim rendition of a tendered instruction. The failure to tender an instruction in writing waives the error, if any, of not giving the requested instruction. *Miller v. State* (1978), 267 Ind. 635, 372 N.E.2d 1168. Furthermore, if the requested instruction is not specifically set out in the argument section of the appellant's brief, the alleged error is waived. *Miller, supra*; Indiana Rules of Procedure, Appellate Rule 8.3(A)(7).

Coker admits that he did not tender an instruction on possession but argues, citing *Ellis v. State* (1977), Ind.App., 362 N.E.2d 1162, that the error is not waived because a written tender would have been futile.

In *Ellis*, the trial court expressly instructed defense counsel not to tender written instructions and expressly excused counsel from making a written tender. The record before us does not present this factual situation. It appears that counsel failed to tender a written instruction on possession and subsequently objected to the court's failure to give an instruction on the offense of possession. These facts do not present a situation where a written tender would have been futile. We therefore hold that Coker has waived any error in the failure to instruct on lesser included offenses.

Coker raises as error the trial court's refusal to give his tendered instructions numbered one and two. The substance of these instructions was covered by the court's final instructions numbered 5, 6 and 8 concerning the presumption of innocence, the doctrine of reasonable doubt and the principles of aiding and abetting. The court did not err in refusing Coker's tendered instructions. *Wilson v. State* (1978), Ind., 374 N.E.2d 45; *Woodard v. State* (1977), 267 Ind. 19, 366 N.E.2d 1160.

Coker lastly contends that the trial court erred in granting Coker's motion to post a real estate bond on the condition that he retain private counsel to perfect the appeal. This issue is moot. The trial court on its own motion appointed Coker's present counsel as pauper appellate counsel and Coker is presently free on bail. Clearly any prejudicial error in the court's ruling has been eliminated.

Judgment affirmed.

HOFFMAN and STATON, JJ., concur.