Robert BONDS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9808–CR–420.

Supreme Court of Indiana.

Dec. 17, 1999.

---

Hilary Bowe Oakes, Indianapolis, attorney for appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, attorneys for appellee.

BOEHM, Justice.

Robert Bonds was convicted of the murder of Michael Webster and conspiracy to commit murder. He was sentenced to sixty-five years for murder and fifty years for conspiracy to be served consecutively. Bonds appeals, arguing that there is insufficient evidence to support his convictions, that the trial court failed to find a mitigating circumstance and that his sentence is manifestly unreasonable. We affirm the trial court.

### Factual and Procedural Background

On July 9, 1997, Bonds' mother, Ernestine Bonds, was carjacked at gunpoint by Webster. Two days later Webster was killed as he was getting into his car in a strip mall parking lot. Seventeen shots were fired from both a .38 caliber revolver and a nine millimeter handgun into his head, forearm and chest, all at close range. Bonds, Jewan Brown, Jermaine Brown and Marco Clark were arrested and charged with murder and conspiracy to murder. All but Jermaine were tried in the same proceeding. The parties stipulated at trial that the .38 caliber bullets recovered from Webster's head and body were fired from a .38 caliber revolver recovered by the police in a residential area near the parking lot where Webster was killed.

Evidence at trial included the testimony of several eyewitnesses that Bonds, both Browns, Clark and possibly others arrived at the parking lot in three different cars. Jewan and Clark were in Jewan's girlfriend's purple Taurus, Jermaine was in his girlfriend's white Oldsmobile, and Bonds and others came in Bonds' black Blazer. Witnesses stated that after identifying Webster, members of the group ap-

proached Webster and shot him. Witness testimony conflicted as to who fired the shots.

Jermaine Brown testified that at approximately 4:00 p.m. on the afternoon of the murder he drove his girlfriend's white Oldsmobile to the parking lot at the request of his sister to check on their brother Jewan. He had seen Jewan with a .38 caliber revolver and Clark with a nine millimeter handgun earlier that day. After Jermaine observed Webster leaving a store in the strip mall, he and the others approached Webster as Webster was getting into a red car. As Jermaine walked around the back of the car he heard a gunshot. Jermaine first ducked, then stood up and saw Clark shoot Webster through the open window of the backseat door. Although Jermaine admitted that he did not see the first shot fired, he testified that his brother fired the first shot at Webster's head. He stated that he left in the white Oldsmobile and Bonds and the others left in the Blazer.

Shawntae Kelly, Jermaine's girlfriend, testified that on the afternoon of the shooting Bonds was at her house when he received a page, said "Revco, let's go" and left with several others. A Revco store was located in the strip mall along with several other stores. Later that evening she heard Jewan tell someone on the phone that he and Clark had shot someone that day.

Tiffany Wilson, Jewan's girlfriend, testified that she owned a purple Taurus. On most days Jewan would drop her off at work and keep the car until he picked her up after her shift. Jewan dropped her off at 3:00 p.m. on the day of the shooting and kept the Taurus as usual. She heard from a friend later that her car was in the parking lot where the shooting occurred.

Linda Knox, an employee at the Revco store, testified that she saw two young men in a purple car in the store's parking lot. The two waited in the car for ten to fifteen minutes until others arrived in a black Blazer and a white car and the two in the purple car got out to talk to them.

Knox heard the driver of the white car say "[i]s that him?" and saw the group approach a man who had just exited a store and was getting into his red car. She also saw the driver of the purple car repeatedly shoot the man in the red car before running to the white car to drive away.

William Russell testified that as he drove into the parking lot on the day of the shooting, he noticed a white Oldsmobile in the parking lot. He heard a person say "[t]here [he] is" and saw a group of men approach the red car and saw the man from the white car shoot repeatedly.

Helen Shouse testified that when she arrived at the parking lot on the afternoon of the shooting, she saw both a purple car and a black Blazer. She saw the white Oldsmobile arrive shortly thereafter. The driver of the white Oldsmobile was talking to the driver of the Blazer when he pointed out a man exiting a store by saying "[t]hat's [him]" to the driver of the Blazer. The driver of the Blazer said "oh, okay," and the group approached the red car. Shouse saw the driver of the white car fire repeated shots at the man in the red car.

Finally, Kevin Ritchey testified that the day before the murder Bonds and Jewan approached him, asking who had carjacked Ernestine. Jewan told Ritchey that whoever did it was going to "get burned." When asked by the prosecutor what "get burned" meant, Ritchey replied get "shot."

Bonds was convicted of murder and conspiracy to commit murder. The trial court sentenced Bonds to sixty-five years for the murder and fifty years for the conspiracy to be served consecutively. He appeals his convictions and sentence.

## I. Sufficiency of the Evidence

Bonds contends that the State failed to present sufficient evidence to support his convictions for murder and conspiracy to commit murder. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Soward v. State,* 716 N.E.2d 423, 425 (Ind.1999). Rather we look to the evidence and reasonable inferences drawn therefrom that support

the verdict and will affirm the convictions if there is sufficient probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Garrett v. State,* 714 N.E.2d 618, 621 (Ind.1999); *Anderson v. State,* 699 N.E.2d 257, 261 (Ind.1998).

Bonds contends that because there is no testimony or other evidence that he fired a gun at Webster or that he ordered anyone else to shoot Webster, his convictions cannot stand. However, circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *See Franklin v. State,* 715 N.E.2d 1237, 1241 (Ind.1999).

The jury was instructed on accomplice liability and it is well settled that an accomplice is "criminally liable for the acts done by [the accomplice's] confederates which were a probable and natural consequence of their common plan...." *Edgecomb v. State,* 673 N.E.2d 1185, 1193 (Ind.1996) (quoting *Johnson v. State,* 490 N.E.2d 333, 334 (Ind.1986)). A trier of fact may infer that a defendant aided in the commission of the crime from the person's (1) presence at the scene of the crime, (2) companionship with another engaged in a crime, (3) failure to oppose the commission of the crime, and (4) the course of conduct before, during and after the crime. *Edgecomb,* 673 N.E.2d at 1193; *cf. Richardson v. State,* 697 N.E.2d 462, 465 (Ind.1998) (State need not prove that defendant personally participated in the acts that caused victim's death).

The day before Webster was killed, Bonds and Jewan were looking for Webster and Jewan stated that the person who stole Bonds' mother's car would "get burned." Bonds went to the parking lot when he was paged and met Jewan and Clark who were armed. When Webster exited a store, Bonds and the others approached Webster and, without discussion about recovering Bonds' mother's car or any other warning, killed Webster. Finally, Bonds fled the scene with the others after the shooting. In sum, Bonds' behavior before, during and after the shooting supports his participation in the murder. These facts are sufficient for a reasonable jury to find Bonds guilty of Webster's murder, either as a principal or an accomplice.

Bonds' conviction for conspiracy to commit murder is also supported by sufficient evidence. A conviction for conspiracy requires the State to prove that the defendant had the intent to commit murder, agreed with another person to commit the crime, and performed an overt act in furtherance of the agreement. *See* Ind. Code § 35-41-5-2 (1998); *Williams v. State,* 690 N.E.2d 162, 170 (Ind.1997).

Bonds and others were searching for Ernestine's carjacker with revenge as a stated goal. On the day of the shooting, Bonds received a page and stated, "Revco, lets go." When Bonds arrived at the parking lot, which was the overt act charged in the information, Jewan and Clark were already there. Several witnesses testified that when Webster walked out of the store toward his car, someone in the group stated, "There [he] is." The group then approached Webster and someone started firing. In the aggregate this is sufficient to establish motive, a concerted action by the group, and implementation of a prearranged agreement to shoot Webster. This is substantial evidence of probative value from which a reasonable jury could conclude that Bonds conspired to commit murder.

## II. Sentencing

Bonds contends that the trial court failed to give adequate weight to the fact that his imprisonment would create a hardship for his family and failed to find as a mitigating circumstance the fact that he "accepted some responsibility for the incident," making his sentence manifestly unreasonable.[1] Although Bonds makes all of

1. Bonds also suggests that his sentence vio-

lates Article I, Sections 16 and 18 of the

these arguments under the heading "manifestly unreasonable," the standard for review of a sentence under Appellate Rule 17, the failure to find mitigating circumstances is an alleged error in the trial court's sentencing statement.

## A. Sentencing Statement

■■■■ Bonds is correct that the trial court's sentencing statement must identify all "significant" mitigating circumstances. *Hammons v. State,* 493 N.E.2d 1250, 1254 (Ind.1986). A trial court's sentencing statement is reviewed for an abuse of discretion. *Harris v. State,* 659 N.E.2d 522, 527 (Ind.1995). The trial court expressly considered the fact that Bonds' incarceration would create hardship for his family. Bonds suggests that the trial court did not give this circumstance enough weight. However, "[t]he trial court is not required to give the same weight to proffered mitigating circumstances as the defendant does." *Thacker v. State,* 709 N.E.2d 3, 10 (Ind.1999).

■■■■ Bonds also points to his expression of remorse and acceptance of responsibility as a mitigating circumstance that the trial court failed to take into consideration. Bonds' statement:

> I'm sorry that the family—I'm remorseful for all what happened. I was just in the wrong place at the wrong time because I didn't—I didn't tell nobody; I didn't pay nobody. I was just going to talk to the guy about getting my mother's car back. I'm sorry about what all happened. I just don't know what went wrong

is at best an equivocal statement that he was involved in Webster's death but is well short of a full acceptance of responsibility. It certainly does not qualify as a significant mitigating circumstance that the trial

court was required to take into account. The trial court did not abuse its discretion in failing to find Bonds' expression of remorse as a significant mitigating circumstance. *See, e.g., Wooley v. State,* 716 N.E.2d 919, 931 (Ind.1999) (rejecting defendant's apology to the victim's family as significant mitigating circumstance); *cf. Wilkins v. State,* 500 N.E.2d 747, 749 (Ind. 1986) (finding no error in trial court's failure to address mitigating circumstances that were highly disputable in nature, weight, or significance).

## B. Manifestly Unreasonable

■■■ Bonds also claims that his sentence is manifestly unreasonable and asks this Court to impose presumptive sentences and to order them to be served concurrently. Although this Court has the constitutional authority to review and revise sentences, Ind. Const. art. VII, § 4, it will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). This Court has explained this standard as "not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Garrett v. State,* 714 N.E.2d 618, 623 (Ind. 1999) (quoting *Prowell v. State,* 687 N.E.2d 563, 568 (Ind.1997)).

■■■ As the trial court noted, this offense was particularly brutal. Bonds and others hunted Webster for two days and when they found him, fired seventeen gunshots from close range into his head, forearm and chest. Moreover, this was not Bonds' first offense: he had a felony cocaine conviction and misdemeanor convictions for a handgun violation and possession of marijuana. Bonds' prior exposure

---

Indiana Constitution which require that penalties be proportional and that the penal code be founded on the principles of reformation. For the reasons explained in Part II.B., Bonds' sentences of sixty-five years for murder and fifty years for conspiracy are not disproportionate to the "brutal" nature of his offense. *Cf. Angleton v. State,* 714 N.E.2d

156, 162 n. 6 (Ind.1999). As also explained in *Angleton,* "particularized, individual applications are not reviewable under Article I, Section 18 because Section 18 applies to the penal code *as a whole* and does not protect fact-specific challenges." *Id.* (quoting *Ratliff v. Cohn,* 693 N.E.2d 530, 542 (Ind.1998)) (emphasis in *Ratliff*).

to the criminal justice system had not deterred or reformed him. Accordingly, we cannot conclude that his total sentence is manifestly unreasonable in light of the nature of this offense and the character of this offender.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur.

SULLIVAN, J., concurs except as to Part II–B, as to which he concurs in result.