**April M. BROWN, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 35S00–0010–CR–599.

Supreme Court of Indiana.

June 17, 2002.

Jill M. Denman, John W. Bailey, Matheny, Michael, Hahn & Bailey, LLP, Huntington, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

While appellant April M. Brown sat and watched, her husband Levohn (Lee) Brown struck their three-year-old daughter with a blow that proved fatal because the parents let her go for a week without any medical attention. A jury found April Brown guilty of aiding in murder and neglect of a dependent causing serious bodily injury. We affirm the latter, and remand for a new trial on the former.

### Facts & Procedural History

On February 4, 2000, Lee Brown struck his three-year-old daughter MicKenzie in the back of the head with a large wooden paddle as she stood with her nose against a wall. The blow caused a four-and-one-half-inch skull fracture. April Brown, MicKenzie's stepmother, witnessed the blow. Though April saw no serious signs of injury immediately after the attack, over the following week she watched MicKenzie's health deteriorate significantly. April did not seek medical treatment for MicKenzie until February 11, when she called 911. MicKenzie died from the untreated skull fracture shortly after arriving at the emergency room.

April was charged with aiding MicKenzie's murder[1] and with neglect of a dependent causing serious bodily injury.[2] A jury found her guilty on both counts, and the trial court sentenced her to maximum consecutive terms totaling eighty-five years.

---

**1.** Ind.Code Ann. §§ 35–42–1–1(1), 35–41–2–4 (West 1998).

**2.** *Id.* at § 35–46–1–4.

## I. Was April an Accomplice?

■ Because it is so pivotal to April's claim of trial error, we begin by considering the sufficiency of the evidence that she aided in MicKenzie's murder.

To convict April of aiding in murder, the State had to prove beyond a reasonable doubt that she (1) knowingly or intentionally (2) aided, induced, or caused Lee (3) to murder MicKenzie. *See* Ind.Code Ann. §§ 35–41–2–4, 35–42–1–1(1) (West 1998).

■ The particular facts and circumstances of each case must be considered in determining whether a person participated in the commission of an offense as an accomplice. *Peterson v. State*, 699 N.E.2d 701 (Ind.Ct.App.1998). Certain factors have long been considered probative in that determination, including: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the commission of the crime; and (4) a defendant's course of conduct before, during, and after the occurrence of the crime. *Johnson v. State*, 490 N.E.2d 333, 334 (Ind.1986).

April does not dispute her presence at the scene of the crime, and her marriage to Lee clearly constituted "companionship." This companionship continued for a period of time even after MicKenzie's death.

The facts most favorable to the verdict indicate that April heard Lee tell MicKenzie, "you're going to listen to me or I'm going to beat it into you" just prior to the beating. (R. at 491–92.) She also heard Lee ask MicKenzie, "Do you want me to put you through this wall[?]" (*Id.*)

After hearing these threats, April joined Lee in the bedroom to find him holding MicKenzie against a wall by her pajamas. (*Id.*) He again was threatening "to put her through the wall." (*Id.*) April sat down and watched Lee strike MicKenzie in the back of the head with a large wooden paddle.

Lee then asked April, "[H]ave I gone too far?" (R. at 632.) She replied, "[Y]ou are too easy on her, she was—she is—she will be fine." (*Id.*) She also said that "she was sick of [Lee] treating MicKenzie like a porcelain doll." (R. at 632–33.) April made similar comments to Lee before the day of this incident. (*Id.*)

After the attack, April cleaned up MicKenzie's blood that had splattered on surrounding objects for fear that someone would realize what had occurred. (R. at 361, 377.) Over the next few days, April realized MicKenzie was having trouble standing, walking, moving her left arm, focusing her eyes, and controlling her bowels. (R. at 517.) MicKenzie also suffered numerous bruises to her entire body. (R. at 339–40, 517.) During this time, April would watch as Lee knocked MicKenzie on her head and slapped her in the face. (R. at 518.) Two days after the beating, April saw Lee slap MicKenzie "hard enough that [her] head would jolt back" and cause her to fall to the ground. (R. at 519.)

From Monday until Thursday, the four days preceding MicKenzie's death, April was the sole parent in the home, (R. at 637), and she recognized the need for medical treatment, (R. at 339–40, 343–45, 347, 517). She requested the advice of a friend, who upon seeing MicKenzie was so alarmed at the child's condition that he offered to take them to the hospital. (R. at 347, 615–17, 621.) April declined and instead did nothing. (*Id.*)

On the morning of February 11, MicKenzie stopped breathing. Only after speaking with Lee did April call 911. The fireman who first responded to the emergency call testified about MicKenzie's visibly protruding forehead and the bruises that covered her body. He also described

MicKenzie's rigid and swollen torso, which was the result of massive bleeding in her stomach.

While doctors and emergency technicians attempted to save MicKenzie's life, April frustrated their efforts. She concocted stories of MicKenzie suffering from the flu, experiencing respiratory problems, and taking adult doses of medication.

Even after MicKenzie's death, April continued to cover up the crime by lying to the authorities on numerous occasions. (R. at 300, 305–07, 314, 324, 328–31, 337–38, 354–55, 376.) It was only after Lee admitted striking MicKenzie with the paddle that April told authorities about the circumstances surrounding the incident. (R. at 356–66.)

April's failure to oppose MicKenzie's continued abuse and to seek medical treatment is particularly probative because she owed a parental duty to protect. *See Mobley v. State,* 227 Ind. 335, 85 N.E.2d 489 (1949). In *Mobley,* this Court confronted an eerily similar case of child abuse. Three-year-old Alice Mobley died from cerebral injuries caused by repeated acts of violence committed by her mother's boyfriend. 227 Ind. at 340–41, 85 N.E.2d at 491.

Although it was unclear whether any of Alice's mother's acts caused the brain injuries, it was undisputed that the child was in the exclusive control of the mother and her boyfriend for the weeks preceding her death. *Id.* In discussing the possibility that none of the mother's acts contributed to the child's death, Justice Young wrote:

> While it is true that the mere presence of a person at the scene of a crime is insufficient to constitute him a principal therein, in the absence of anything in his conduct showing a design to encourage, incite, aid, abet or assist in the crime, the trier of the facts may consider failure of such person to oppose the com-

mission of the crime in connection with other circumstances and conclude therefrom that he assented to the commission of the crime, lent his countenance and approval thereto and thereby aided and abetted it. This, it seems to us, is particularly true when the person who fails to interfere owes a duty to protect as a parent owes to a child.

*Mobley,* 85 N.E.2d at 492, 227 Ind. at 344 (internal citations omitted). This rationale is particularly pertinent to the instant case.

Our review of these multiple factors, including April's presence at the scene of the crime, her continued companionship with Lee, her statements of encouragement for harsher punishment both before and after the skull-fracturing blow, her failure to render or seek medical treatment despite its obvious necessity, her status as the sole caregiver for much of the week prior to MicKenzie's death, her failure to oppose continued abuse after the initial injury, her repeated lies to medical personnel and authorities about the cause of MicKenzie's death, and especially her duty to protect the child, all lead us to conclude that she "assented to the commission of the crime, lent h[er] countenance and approval thereto and thereby aided and abetted it." *Id.*

The State presented sufficient evidence to convict April of aiding in MicKenzie's murder.

## II. Claims of Error

Still, this is not a standard set of facts constituting accomplice liability. April lent her encouragement to these abhorrent acts and was a significant cause of MicKenzie's death, but she did not participate in the physical act of landing the blow. With the evidence supporting accomplice liability as close as it is, we turn to April's two claims of trial error.

### A. Exclusion of Lee's Testimony.

The defense called Lee to the stand during its case-in-chief and asked him what his intent was in administering the blow to MicKenzie's head. The State objected, arguing that Lee's intent was irrelevant. The trial court did not allow Lee to answer. The defense subsequently made an offer of proof that Lee would have testified that he did not intend to cause MicKenzie's death and that the strike to the head was an accident. (R. at 666.)

Claims of error in the exclusion or admission of evidence are reviewed for an abuse of discretion. *McCarthy v. State*, 749 N.E.2d 528 (Ind.2001). An error is harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect a party's substantial rights. *Stewart v. State*, 754 N.E.2d 492 (Ind.2001).

The evidence in question bore directly on Lee's state of mind in striking MicKenzie. Without the finding of a knowing or intentional killing by Lee, the State could not have proven that April aided him in the murder. *See Johnson v. State*, 687 N.E.2d 345, 350 (Ind.1997) (citation omitted) ("An accomplice may be tried and convicted when the proof of the underlying crime is sufficient."). While it is true, as the State has argued, that it could obtain a conviction without proving that Lee intended to cause death (by showing that he "knowingly" caused the death), his level of intentionality was an important element of proof in April's crime as charged.

Our review of the record convinces us that this error was not harmless. The defense did elicit testimony from Lee that he was going to spank MicKenzie for her defiance, (R. at 627, 629), but Lee was not otherwise allowed to explain his intent in striking MicKenzie. Given a different set of facts on the issue of accomplice liability, we might rule this error harmless. But considering the closeness of the evidence on this charge, the exclusion of this evidence requires reversal.

### B. Lesser Included Instructions.

April also argues that the trial court erred by refusing a jury instruction on the lesser included offenses of aiding in reckless homicide and aiding in voluntary manslaughter.

To determine whether to instruct the jury on a lesser included offense of a charged crime, the court must employ the analysis outlined in *Wright v. State*, 658 N.E.2d 563 (Ind.1995). First, the court must compare the statute defining the charged crime with the statute defining the lesser included offense to determine whether the lesser included offense is "inherently included" in the crime charged. *Id.* at 566.

Where the only element distinguishing the crimes is the degree of culpability, as is the case between reckless homicide and murder, the lesser included offense is inherently included. *See Miller v. State*, 720 N.E.2d 696, 702–03 (Ind.1999); *accord Taylor v. State*, 587 N.E.2d 1293, 1303–04 (Ind.1992). Therefore, aiding in a reckless homicide is an inherently included lesser offense of aiding in a murder.

Having satisfied the first requirement, the trial court must then evaluate the evidence presented by both parties. *Wright*, 658 N.E.2d at 567. If there is a serious evidentiary dispute about the elements distinguishing the greater offense from the lesser offense and "a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." *Id.* If, on the other hand, there is no meaningful evidence from which the

jury could properly find the lesser offense was committed, the court should not give the lesser included offense instruction. *Id.*

Our analysis of this requirement is complicated by the trial court's exclusion of Lee's testimony regarding his intent in striking MicKenzie. Had the trial court properly allowed the testimony, he would have testified that he accidentally struck MicKenzie in the head and that he did not intend to kill her. (R. at 665–66.) In support of this statement, Lee testified that prior to striking MicKenzie, he told April that he was going to give MicKenzie "a couple swats on the behind." (R. at 629.)

This evidence would have created a serious evidentiary dispute as to whether Lee committed murder, reckless homicide or voluntary manslaughter. Had the jury believed this assertion, it could not have properly convicted April of aiding in murder because conviction of an accomplice requires sufficient proof of the underlying crime. *See Sanquenetti v. State,* 727 N.E.2d 437, 441 (Ind.2000). As such, the trial court's refusal to instruct the jury on the lesser included offenses of aiding in reckless homicide or in voluntary manslaughter was reversible error.

## III. There Was Evidence of Neglect

■ April next contends that insufficient evidence supported her conviction for neglect of a dependent causing serious bodily injury. On this claim, some additional details about MicKenzie's horrific death are telling.

After recognizing MicKenzie's dire medical condition, April and Lee, rather than taking their three-year-old to a doctor, attempted "therapy." They bathed MicKenzie in an Epsom salt bath only to watch as her head repeatedly rolled to the side, filling her mouth with water. (R. at 349.) When this "therapy" failed, April watched as Lee attempted to make MicKenzie stand on her own. (R. at 350.) Each time he would release MicKenzie, she would fall to the ground, sometimes hitting her head. (R. at 350–51.)

Furthermore, the State presented testimony from Dr. Scott Wagner, who said that children are resilient to head injuries and that MicKenzie's chances for survival were good had she received prompt medical treatment. (R. at 422.) Though Dr. Wagner could not pinpoint when MicKenzie became untreatable, he testified that her medical condition would have worsened with each passing day and the sooner the treatment, the better chance MicKenzie would have had to live. (R. at 419–22.) Dr. Wagner further testified that MicKenzie would not have appeared normal just after the blow, would have frequently been unconscious, and would have continued to get worse before her eventual death. (R. at 419–21.)

This tale of maternal neglect is so shocking that the customary words of legal analysis seem inadequate to the task. Simply put, overwhelming evidence proves April knew MicKenzie desperately needed medical treatment and that MicKenzie would still be alive had she received it promptly. We affirm April's conviction of neglect of a dependent causing serious bodily injury.

## IV. Sentencing

Finally, April challenges her twenty-year sentence for neglect of a dependent as both erroneous and manifestly unreasonable.

■ *A. Aggravating and Mitigating Factors.* The trial court found five aggravators: (1) April's lack of remorse; (2) her need for correctional or rehabilitative treatment; (3) imposition of a reduced sentence or suspension of the sentence would depreciate the seriousness of the crime; (4) the victim's age; and (5) the nature and

circumstances of the crime. The trial court found one mitigator, April's lack of criminal history.

April first argues that her need for rehabilitation best served by incarceration was not supported by the record. The State concedes that this aggravating factor was improper. The remaining aggravators, however, may serve to enhance April's sentence.

April also contends that the trial court erred in failing to consider two mitigating factors: (1) the likelihood that the offense would never re-occur because April and Lee subsequently divorced; and (2) that the need for supervision is low. Though the trial court must identify all "significant" mitigating factors, it is not required to accord them the weight defendant requests. *Bonds v. State*, 721 N.E.2d 1238, 1243 (Ind.1999).

April claimed she did not seek medical treatment for MicKenzie because she feared reprisal from Lee. (R. at 347, 355–56, 520–21.) Though April was no longer married to Lee by the time of her sentencing, her trial testimony revealed a history of abusive relationships. (R. at 441–68.) In light of this evidence, the trial court did not abuse its discretion in rejecting April's contention that she was unlikely to neglect a dependent again.

It was also within the court's discretion to reject as a significant mitigating factor April's claim that she needed little supervision. Though April correctly points out that the risk assessment instrument prepared for the pre-sentence report indicates relatively low risk, April's own contributions to the report could rightly have given Judge McIntosh pause on this point. Asked what type of sentence she thought she should receive, April replied, "I don't feel I deserve anything [f]or a crime I didn't commit. [Seven] months has already been taken from my children, my family, and myself unjustly." (Appellant's App. at 49.)

■ *B. Manifestly Unreasonable.* April also argues that her sentence is manifestly unreasonable. In light of the nature of Brown's neglect and her stunning lack of remorse following the incident, a twenty-year sentence is hardly unreasonable.

### Conclusion

We reverse the conviction for aiding in murder and remand for retrial. We affirm the conviction and sentence for neglect of a dependent.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., concurs in part and dissents in part with separate opinion.

BOEHM, Justice, concurring in part, dissenting in part.

I concur in the part of the opinion affirming Brown's conviction for neglect of a dependent causing severe bodily injury. Although this three-year-old child was the victim of a horrible and disgusting crime, I respectfully dissent from the portion finding sufficient evidence to convict Brown of aiding murder.

The majority does not address what seems to me to be a critical gap in the State's evidence. Brown was charged with being an accomplice to murder. Accordingly, as the majority opinion reflects, if there was a murder in the facts, it is the blow Lee struck, not the subsequent events as to which Brown was a principal, not an accomplice. I cannot find evidence that supports the notion that Brown either "knowingly" or "intentionally" assisted Lee in causing MicKenzie's death. Accomplice liability requires a person "knowingly and intentionally" aid the principal. Ind. Code

§ 35–41–2–4 (1998). This requires proof beyond reasonable doubt that either (1) Brown knew Lee was about to deliver a fatal blow or (2) Brown intended to encourage Lee to kill the child.

In most crimes, the acts of assistance also supply awareness of the principal's purpose to commit the crime. Here, however, all Brown did was tell Lee he was "going to easy" on the victim and fail to intervene in Lee's clearly expressed intent to punish the child. I cannot infer from this evidence that at the time immediately before the fatal blow was struck by Lee, Brown had any basis to conclude that death would result. Certainly, I cannot find evidence of her knowledge of a high degree of probability that death would result or a "conscious objective" that the child be killed. I.C. § 35–41–2–2. To be sure, Brown's actions after the fatal blow was delivered fully support the neglect of a dependent conviction. I would affirm the conviction of neglect of a dependent, reverse the murder conviction, and impose the trial court's maximum sentence of twenty years.