861 P.2d 37 (1993)
STATE of Hawaii, Plaintiff-Appellee,
v.
Elena Louise TUCKER, Defendant-Appellant, and
Glenn Edward Tucker, Sr., Defendant.
STATE of Hawaii, Plaintiff-Appellee,
v.
Glenn Edward TUCKER, Sr., Defendant-Appellant, and
Elena Louise Tucker, Defendant.
Nos. 15255, 15264.
Intermediate Court of Appeals of Hawaii.
September 1, 1993.
Order Denying Reconsideration September 22, 1993.
Certiorari Denied October 14, 1993.
Order Denying Reconsideration October 29, 1993.
*41 Steven West, Deputy Public Defender (Linda C. Ramirez, Deputy Public Defender, on the briefs), Honolulu, for defendant-appellant Elena Louise Tucker.
Pamela J. Berman, Court-appointed Atty., Honolulu, for defendant-appellant Glenn Edward Tucker, Sr.
Caroline M. Mee, Deputy Pros. Atty., City and County of Honolulu, Honolulu, for plaintiff-appellee.
Theodore Y.H. Chinn, Deputy Public Defender, Honolulu, on the motion for reconsideration, for defendant-appellant Elena Louise Tucker.
Pamela J. Berman, Court-appointed Atty., on the motion for reconsideration, Honolulu, for defendant-appellant Glenn Edward Tucker, Sr.
Before BURNS, C.J., and HEEN and WATANABE, JJ.
WATANABE, Judge.
Following a consolidated jury trial, Elena Louise Tucker (Elena) and Glenn Edward Tucker, Sr. (Glenn), wife and husband (collectively, Defendants), were convicted and sentenced for the second degree murder of their six-month-old son, Glenn Edward Tucker, Jr. (Baby Glenn). Both Defendants appealed, alleging that the trial court committed several reversible errors. In State v. Tucker, ___ Haw.App. ___, 861 P.2d 24 (1993), this court vacated the judgment and remanded the case to the trial court, concluding that the trial court reversibly erred when it (1) gave a flawed jury instruction on the elements of murder in the second degree, which led to an improper closing argument by the deputy prosecutor; and (2) admitted into evidence the redacted confessions of Elena and Glenn, which implicated the other spouse. We specifically declined to address the remaining allegations of error raised by Defendants.
After considering the Application for Certiorari filed by the State of Hawaii (State), the Hawaii Supreme Court issued an order, dated July 21, 1993, agreeing with our June 10, 1993 opinion on the issues considered, but granting the Application and remanding the case to this court for a determination of the points on appeal we had previously declined to consider. This opinion, therefore, supplements our prior opinion and addresses the remaining points of error raised by Defendants.

DISCUSSION
Elena argues that the trial court committed reversible error when it: (1) gave the jury an improper instruction on accomplice liability; (2) failed to instruct the jury, sua *42 sponte, that it had to consider the evidence separately and individually as to each defendant; (3) allowed testimony of Elena's prior involvement with the Hawaii Department of Human Services, Child Protective Services Branch (CPS); and (4) admitted testimony that Elena appeared unremorseful about Baby Glenn's critical condition. Glenn argues, additionally, that there was no substantial evidence to support the jury's guilty verdict against him.

I.

Propriety of Jury Instructions on Accomplice Liability
Over the objections of defense counsel, the court read to the jury the following instructions on accomplice liability:
All persons who are present and participate in the commission of a crime are responsible for the action of each other, done or made in the furtherance of the crime. It is not necessary to prove by direct evidence that a defendant committed all the actions of which the crime consists, where it has been proved beyond a reasonable doubt that he or she is the accomplice of another.
A person is an accomplice of another in the commission of an offense if, with the intention of promoting or facilitating the commission of the offense, he or she does any of the following: One, aids another person in planning or committing the offense; or, two, agrees to aid the other person in planning or committing the offense; or, three, attempts to aid the other person in planning or committing the offense.
If a person is an accomplice of another he or she is responsible for each act committed by the other as if he  as if he or she committed the act himself or herself.
An accomplice who does one act which is an ingredient of [the] crime or immediately connected with it is guilty as if he or she committed the whole crime with his or her own hands.
2/14/91 Transcript (No. 6182) at 26.
Elena argues that the accomplice instruction was erroneously given for three reasons. First, Elena argues that the instruction was not warranted by the evidence at trial, since there was no showing that Defendants were working in concert.
Second, Elena contends that the accomplice instruction was extremely misleading because the first paragraph fails to include the requisite state of mind for accomplice liability. While conceding that the correct definition of an accomplice with its accompanying state of mind element was given in the third paragraph, Elena nevertheless maintains that the jury may have mistakenly believed that her failure to act, without more, was enough to hold her liable under the accomplice theory.
Third, Elena contends that the accomplice instruction should not have been given because the statutory duty to provide medical care to one's child is a duty owed by the individual parent and "accomplice theory is simply not applicable where the duty is individually, and not jointly, owed." Elena's Opening Brief at 23, 41.
On appeal, jury instructions are read and considered as a whole, to determine whether they are prejudicially insufficient, erroneous, inconsistent or misleading. State v. Pemberton, 71 Haw. 466, 477, 796 P.2d 80, 85 (1990) (citing State v. Halemanu, 3 Haw.App. 300, 306, 650 P.2d 587, 592 (1982)). Measured against this standard, the trial court did not err in giving the accomplice instruction.
First, based on our decision in State v. Churchill, 4 Haw.App. 276, 664 P.2d 757 (1983), the accomplice instruction correctly stated the relevant law and was therefore properly given, if warranted by the evidence.
In determining whether an instruction is warranted by the evidence, "the court does not pass on the weight and sufficiency of the evidence. It is not error to submit an instruction covering a theory advanced by a party if there is any evidence on which to base it, although it may be slight and inconclusive, or opposed to the preponderance of the evidence." State *43 v. Okuda, 71 Haw. 434, 452, 795 P.2d 1, 11 (1990) (quoting 75 Am.Jur.2d Trial § 652, at 610 (1974)) (emphasis added).
In the instant case, there is clearly evidence in the record to justify the accomplice liability instruction given by the trial court. For instance, Elena made a statement that although she knew that Baby Glenn was seriously injured, she didn't get help for him because she was told not to say anything. 2 Record on Appeal (R.A.) at 351. There was also testimony by Dr. Thomas Merrill, a psychologist, that Elena has a passive, dependent type of personality and is an "individual who finds it estremely [sic] difficult to act independently without the support and/or direction of others." 2/4/91 Transcript at 26. Therefore, it would not be unreasonable to infer that Elena may have knowingly deferred to Glenn's decision not to seek medical care for Baby Glenn and was thus an accomplice to Baby Glenn's murder.
Reviewed as a whole, moreover, the instruction on accomplice liability was not misleading as Elena contends. The instruction correctly advised the jurors that an accomplice in the commission of an offense, must have "the intention of promoting or facilitating the commission of the offense."
Elena is also incorrect in her assertion that a joint duty is a prerequisite to establishing accomplice liability.
HRS § 702-222 (1985), which defines accomplice liability under the Hawaii Penal Code, specifically provides, in pertinent part:
A person is a accomplice of another person in the commission of an offense if:
(1) With the intention of promoting or facilitating the commission of the offense, he:
* * * * * *
(c) Having a legal duty to prevent the commission of the offense, fails to make a reasonable effort so to do[.]
The plain language of HRS § 702-222 imposes no requirement that a joint legal duty exist before accomplice liability is imposed.
Moreover, the commentary to the Model Penal Code provision on which HRS § 702-222(1)(c) is based, explicitly suggests that accomplice liability exists where a parent fails to stop mistreatment of, or fails to seek medical care for, his or her child, resulting in the child's death. HRS § 702-222(1)(c) is nearly identical to section 2.06(3)(a)(iii) of the Model Penal Code.[1] The commentary to the model section states:
Subsection (3)(a)(iii) provides that failure to act to prevent the commission of an offense will lead to accomplice liability in cases where the actor has a duty to prevent its commission, and many revisions [including Hawaii] have a similar provision which explicitly attaches accomplice liability to omissions.
Model Penal Code and Commentaries § 2.06 at 320 (Official Draft and Revised Comments (1985)) (footnotes omitted). In a footnote, the commentary notes:
Absent a legal duty to prevent the crime, there is, of course, no basis for asserting liability. Presence alone is not enough, absent preconcert. But silence may in special situations be an expression of approval and encouragement. See, e.g., Mobley v. State, 227 Ind. 335, 85 N.E.2d 489 (1949).
Model Penal Code and Commentaries § 2.06 at 320, n. 63. Mobley v. State involved facts very similar to the instant case. A mother and her boyfriend were charged with the death of the mother's three-year-old child, who died of massive bodily injuries covering the child "literally from its head to its feet." 227 Ind. at 340, 85 N.E.2d at 491. The evidence indicated that the child's injuries were mainly inflicted by the boyfriend. However, the Supreme Court of Indiana concluded that the mother, by her presence and failure to stop the beatings, became a party to the child's murder. The court reasoned:

*44 Even if the jury had not believed that violence by the mother caused or helped to cause the child's death, it reasonably could have found that she aided and abetted Fagan in causing it. We have a statute which provides that every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command or otherwise procure a felony to be committed, may be charged by indictment or affidavit, and tried and convicted in the same manner as if he were a principal. It is true that the mere presence of an accused at the time and place of the crime alleged is not sufficient to make such accused guilty, but if from the facts and circumstances surrounding defendant's presence at the time and from defendant's conduct it appears that defendant's presence did in fact encourage someone else to commit the act, guilt may be inferred.
Actively to countenance and support the doing of a criminal act by another is to encourage it, within the meaning of the aiding and abetting statute last above referred to, and a person encouraging the commission of a felony is guilty as a principal and subject to prosecution and conviction the same as the principal, under the statute last referred to. While it is true that the mere presence of a person at the scene of a crime is insufficient to constitute him a principal therein, in the absence of anything in his conduct showing a design to encourage, incite, aid, abet or assist in the crime, the trier of the facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom that he assented to the commission of the crime, lent his countenance and approval thereto and thereby aided and abetted it. This, it seems to us, is particularly true when the person who fails to interfere owes a duty to protect as a parent owes to a child.

227 Ind. at 343-44, 85 N.E.2d at 492-93 (citations omitted; emphasis added).
From the evidence adduced in this case, the jury could similarly have concluded that Elena aided and abetted Glenn in causing Baby Glenn's death by her failure to perform her duty as a parent to provide him with needed medical care. Therefore, the trial court's instruction on accomplice liability was justified and proper.

II.

Failure to Instruct Jury That Evidence Was to Be Considered Separately and Individually as to Each Defendant
Elena also contends that the trial court committed plain error by not instructing the jury, sua sponte, "that each instruction was to be considered separately and individually as to each defendant, and that it was their duty to give separate, personal consideration to the case of each individual defendant." Elena's Opening Brief at 23, 41-42. Elena argues that the absence of this instruction, together with the giving of the accomplice instruction, and the use of the word "they" in the murder in the second degree instruction, served to prejudicially impress upon the jurors that Elena and Glenn were collectively responsible for the death of the child and that her individual state of mind was not to be considered.
We considered and rejected this argument under similar circumstances in State v. Churchill, supra. Therefore, Elena's argument is without merit.

III.

Admissibility of Evidence of Elena's Prior Involvement with Child Protective Services (CPS)
Elena argues that evidence admitted at trial of her prior involvement with CPS constitutes bad character evidence, inadmissible under Rule 404(b) of the Hawaii Rules of Evidence (HRE), which provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, *45 such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Elena argues that the evidence was inadmissible since it inferred that because she overfed her baby and did not keep him properly cleaned, thereby requiring CPS supervision, she probably also did not provide him with adequate medical care. Elena contends that the danger of prejudice to her outweighed any probative value of the evidence because such evidence tended to distract the jury from the main question of what happened on the particular occasion, and in all probability, evoked a hostile reaction against her.
A trial court's decision regarding the admissibility of "other crimes, wrongs, or acts" is reviewed on appeal under the abuse of discretion standard. State v. Renon, 73 Haw. 23, 31, 828 P.2d 1266, 1270 (1992). Generally, "to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded the rules or principles of law or practice to the substantial detriment of a party litigant." State v. Sacoco, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961). Evaluated against this standard, the trial court did not abuse its discretion in allowing witnesses to testify about Elena's and Glenn's involvement with CPS.
The Hawaii Supreme Court has established a two-step analysis for determining whether evidence should be admitted pursuant to HRE Rule 404(b). First, the trial court must determine if the evidence is relevant and probative of any fact other than the defendant's propensity to commit the crime charged that is of consequence to the determination of the action. If the evidence is determined to be relevant and probative, the court must then balance the probative value of the evidence against its prejudicial impact. Id.
The State contends that it introduced evidence of Defendants' prior involvement with CPS, not to prove their bad character and propensity to commit the offense charged, but rather, to establish that their motive in not seeking medical help for Baby Glenn was to avoid being blamed by CPS for his injuries. The Hawaii Supreme Court has recognized that evidence of prior crimes is admissible to show motive or intent. State v. Apao, 59 Haw. 625, 638, 586 P.2d 250, 259 (1978). The court has also stated that evidence of motive is admissible to prove the "state of mind that prompts a person to act in a particular way; an incentive for certain volitional activity." State v. Renon, 73 Haw. at 37, 828 P.2d at 1273 (citing 22 C. Wright and K. Graham, Federal Practice and Procedure, § 5240, at 479 (1978)).
Therefore, evidence of Defendants' involvement with CPS was clearly probative of matters other than their propensity to commit the offense charged.
Proceeding to the second step of the analysis, we conclude that the probative value of the CPS evidence was not substantially outweighed by unfair prejudice to Defendants. In weighing the probative value of otherwise prohibited evidence against its prejudicial impact, the court must consider a variety of matters, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility. State v. Renon, 73 Haw. at 38, 828 P.2d at 1273.
The record shows that the trial court carefully considered the ramifications of admitting the CPS evidence. After listening to the arguments made by both parties, the court found that the records were admissible under an exception:
Namely, to show the intent of the defendants or knowledge or absence of the mistake or accident. And it would also appear to be necessary to prove the defendants' guilt, especially since the victim is no longer alive and obviously would be too young to provide any information even if he were alive.
In addition, there are conflicting statements that have been given by each of *46 the defendants. And to require the State to rely solely on those statements would appear to unduly prejudice the prosecution.
1/22/91 Transcript at 18-19.
The court also decided that any testimony regarding CPS supervision over the Tuckers' other child would be prohibited, thus minimizing any danger to Defendants.
The Supreme Court has recognized that, "[p]robative evidence always `prejudices' the party against whom it is offered since it tends to prove the case against that person." State v. Klaftka, 73 Haw. 109, 115, 831 P.2d 512, 516 (1992). The court has also stated that, "because a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect." State v. Renon, 73 Haw. at 39, 828 P.2d at 1274.
In view of these principles, we fail to see how the trial court abused its discretion in allowing the CPS testimony.

IV.

Admissibility of Testimony That Elena Appeared Unremorseful About Baby Glenn's Condition
Elena argues that the trial court committed plain error when it allowed Dr. Alan Britten, the emergency room physician who cared for Baby Glenn when he was admitted to Kapiolani Medical Center, and Barbara Service, a CPS social worker, to testify that Elena did not appear remorseful after learning of Baby Glenn's death.[2] Elena claims that such testimony constituted improper expert opinion by Dr. Britten and improper lay opinion by Ms. Service because their testimonies were not helpful in determining whether Elena intentionally or knowingly caused the death of her baby. In addition, Elena argues that the opinions of Dr. Britten and Ms. Service constituted improper character testimony as well as propensity evidence prohibited under HRE Rule 608.
In Hawaii, admission of opinion evidence is a matter within the discretion of the trial court, and only an abuse of that discretion can result in reversal. Sherry v. Asing, 56 Haw. 135, 148, 531 P.2d 648, 658 (1975). We find no abuse of discretion here.
We note at the outset that although both Dr. Britten and Ms. Service were qualified by the trial court as expert witnesses,[3] their testimonies regarding Elena's emotions following Baby Glenn's death were based on personal observations which any lay person was capable of making and, hence, did not constitute "expert opinions." Therefore, the admission of *47 such testimonies was governed by HRE Rule 701, which provides:
Opinion testimony by lay witnesses. If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
According to the Commentary to HRE Rule 701:
This rule is identical with Fed.R.Evid. 701. The rule retains the common-law requirement that lay opinion be based upon firsthand knowledge, McCormick § 10, but liberalizes the traditional doctrine of "strict necessity," which allowed such testimony only where "all the facts cannot be placed before the jury with such clearness as to enable them to draw a correct inference...." Tsuruoka v. Lukens, 32 H. 263, 264 (1932). The present rule adopts in its place the more liberal "convenience" test, McCormick § 11, allowing such testimony when it is "helpful" to the trier of fact in determining or clarifying facts in issue.
* * * * * *
Several considerations support substitution of the "convenience" standard for the "strict necessity" test. As the Advisory Committee's Note to Fed.R.Evid. 701 puts it: "[N]ecessity as a standard for permitting opinions and conclusions has proved too elusive and too unadaptable to particular situations for purposes of satisfactory judicial administration." The committee also cited the "practical impossibility" of distinguishing fact from opinion.
The danger that such liberalization might open the door to factually unsupported, conjectural, or biased inferences is averted by the explicit requirement of firsthand knowledge, by implicit judicial discretion under the rule to exclude opinions for lack of "helpfulness," and by express judicial discretion under Rule 403 supra, to exclude because of the danger of prejudice, confusion, or misleading the jury. The adversary system itself provides still another safeguard, allowing detailed cross-examination on the factual bases of such opinions.
HRE Rule 701 thus sets forth a liberal standard for admitting lay opinions into evidence. As long as (1) the witness has personal knowledge of matter that forms the basis of the testimony; (2) the testimony is rationally based on the witness' perception; and (3) the opinion is "helpful" to the jury (the principal test), the opinion testimony is admissible. State v. Nishi, ___ Haw.App. ___, ___, 852 P.2d 476, 479 (1993).
Applying the foregoing standard to the instant case, we conclude that the trial court did not abuse its discretion when it allowed Dr. Britten and Ms. Service to testify regarding Elena's lack of remorse. The testimony of both witnesses was based on their personal knowledge, observations, and perceptions of Elena, gleaned from extensive discussions with her following Baby Glenn's admission to the hospital and subsequent death. The testimony was also helpful in determining Elena's intent to murder Baby Glenn, since lack of remorse would be expected if she intentionally did not take the baby to the hospital, knowing that Baby Glenn was seriously injured. The Hawaii Supreme Court has stated that:
The law recognizes the difficulty by which intent is proved in criminal cases. We have consistently held that since intent can rarely be proved by direct evidence, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the act is sufficient to establish the requisite intent. Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances.
State v. Sadino, 64 Haw. 427, 430, 642 P.2d 534, 536-37 (1982) (citations omitted). In the instant case, evidence of Elena's criminal intent may be read from inferences fairly drawn from circumstances surrounding Baby Glenn's death, including evidence of her lack of remorse.
*48 Moreover, the probative value of Dr. Britten's and Ms. Service's testimony was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury so as to require the exclusion of such testimony under HRE Rule 403.[4] HRE Rule 701 is essentially a rule of discretion and ample opportunity is given to the parties to cross-examine witnesses about the bases of their opinions. Any prejudicial effect which Dr. Britten's and Ms. Service's testimonies may have generated was offset by Dr. Thomas Merrill's testimony that Elena's "flat affect" and lack of emotion was part of her psychological profile.
Elena also argues that Dr. Britten's and Ms. Service's testimony constituted improper character testimony as well as propensity evidence prohibited under HRE 608. However, since HRE Rule 608 relates to the admissibility of opinion testimony regarding the character of a witness on the stand, we fail to see how HRE Rule 608 is even applicable.

V.

Sufficiency of Evidence to Support Verdict
Glenn argues that, absent Elena's redacted statements, there was no substantial evidence to support the jury's verdict finding him guilty of murder in the second degree. In view of our decision to vacate the judgment and remand for a new trial, we need not decide this issue.

ORDER DENYING MOTION FOR RECONSIDERATION
The Motion for Reconsideration filed by Defendant-Appellant Elena Louise Tucker (Elena) on September 13, 1993 is hereby denied.
Contrary to Elena's contention, the trial court's instructions on accomplice liability, when considered as a whole, did adequately inform the jury that in order to be convicted as an accomplice, the defendant must have had "the intention of promoting or facilitating the commission of the offense."
Elena also requests in her Motion for Reconsideration that this court address her contention that the trial court committed plain error by allowing Plaintiff-Appellee State of Hawaii (State) to argue, in closing arguments, that the State was obligated to prove only one of three definitions of "knowingly" or only one of three definitions of "intentionally." This issue, however, was previously decided in State v. Tucker, ___ Haw.App. ___, 861 P.2d 24 (1993), where we specifically found improper "the prosecutor's closing argument, which was based on the erroneous instruction [on the state of mind for conviction of murder by omission]." ___ Haw.App. at ___, 861 P.2d at 30.

ORDER DENYING DEFENDANT-APPELLANT GLENN EDWARD TUCKER, SR.'S MOTION FOR RECONSIDERATION OF OPINION FILED SEPTEMBER 1, 1993
The Motion for Reconsideration of our opinion (No. 15255, September 1, 1993) (Tucker II), see page 37, filed by Defendant-Appellant Glenn Edward Tucker, Sr. (Glenn) on September 27, 1993, is hereby denied. In his motion, Glenn requests that we determine whether there was sufficient evidence at trial to support his conviction of Murder in the Second Degree, an issue we had previously decided we need not resolve, Tucker II, at 48. Glenn maintains that appellate review of the sufficiency issue is mandated, since a determination of evidentiary insufficiency would bar his retrial under the Double Jeopardy Clause of *49 the Fifth Amendment of the United States Constitution.[1]
Having reviewed the trial record and analyzed applicable double jeopardy case law, we are of the opinion that Glenn's Fifth Amendment rights will not be violated if this case is remanded for a retrial.
According to the Hawaii Supreme Court, the Double Jeopardy Clause bars retrial of a defendant once a reviewing court has found the evidence at trial to be legally insufficient to support a conviction. However, retrial is not barred when the reviewing court reverses a case due to trial error. State v. Hamala, 73 Haw. 289, 834 P.2d 275 (1992).[2]
In the instant case, we reversed Glenn's conviction for trial error, namely erroneous jury instructions and improper admission of evidence, State v. Tucker, ___ Haw.App. ___, 861 P.2d 24 (No. 15255, June 10, 1993) (Tucker I), and under Hamala, Glenn's reprosecution for trial error is constitutionally permissible. Glenn argues, however, that the trial below was infected not only by trial error but also by constitutional insufficiency of the evidence. Therefore, consistent with double jeopardy principles, we cannot remand the case for a retrial based upon trial error without also addressing the sufficiency of evidence claim.
There is support for Glenn's position. While the Hawaii and United States Supreme Courts have yet to grapple with this precise issue, some jurisdictions have held that challenges based upon sufficiency of the evidence must always be decided on appeal, despite the court's reversal on other grounds. See, e.g., United States v. Szado, 912 F.2d 390, 393 (9th Cir.1990); United States v. Quinn, 901 F.2d 522, 529 n. 5 (6th Cir.1990); Harris v. State, 284 Ark. 247, 249-50, 681 S.W.2d 334, 335 (1984); Hooker v. State, 621 S.W.2d 597, 598 (Tex.Cr.App.1980); Mitchell v. State, 44 Md.App. 451, 462, 409 A.2d 260, 267 (1979). Other courts disagree, holding that it is not necessary to review the sufficiency of the evidence when a case is reversed and remanded for a new trial due to trial error. See, e.g., United States v. Porter, 807 F.2d 21, 24 (1st Cir.1986), cert. denied, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987); United States v. Mandel, 591 F.2d 1347, 1373-74, overruled in part on other grounds on rehearing, 602 F.2d 653 (4th Cir.1979), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). Still other courts have decided to review sufficiency of the evidence challenges as a matter of policy, although not required to do so under double jeopardy principles. United States v. Miller, 952 F.2d 866, 874 (5th Cir.1992), cert. denied, ___ U.S. ___, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992); United States v. Douglas, 874 F.2d 1145, 1150 (7th Cir.1989), cert. denied, 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989).
*50 We need not resolve the specific issue in this case, however, because our review of the trial record reveals sufficient evidence to support Glenn's conviction of Murder in the Second Degree.
We note that in Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the United States Supreme Court held that the Double Jeopardy Clause does not bar a retrial where all the evidence offered by the state and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. The Supreme Court stated that "[p]ermitting retrial in [such an] instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to `obtai[n] a fair readjudication of his guilt free from error.'" 488 U.S. at 42, 109 S.Ct. at 291, 102 L.Ed.2d at 274 (citing Burks v. United States, supra, 437 U.S. at 15, 98 S.Ct. at 2149, 57 L.Ed.2d at 12). In this case, the sum of all the evidence in the record, including the redacted confessions that we ruled were inadmissible in Tucker I, legally supported Glenn's conviction.
Motion denied.
NOTES
[1] The only difference between the two versions is that in the Model Penal Code the word "purpose" is used in lieu of "intention" and the word "proper" is used in lieu of "reasonable."
[2] Dr. Britten testified about Elena's reaction to Baby Glenn's condition as follows:

Q. Did you advise Mr. and Mrs. Tucker about the critical condition that Baby Glenn was in?
A. Yes, repeatedly.
Q. And what was Mrs. Tucker's response of [sic] her baby's condition?
A. I recall that she was dismayed. But, overall, I would describe it as a flat affect, not being terribly remorseful, at that time, which seemed unusual, but accepting the fact that their child was probably brain dead.
1/28/91 Transcript at 60.
Ms. Service's testimony describing the Tuckers' appearance after Baby Glenn's death was similar:
Q. Anything else Mrs. Tucker added other than what you already indicated?
A. Neither one of them showed any remorse about the death of the baby and 
MS. BERMAN: Objection. Move to strike as nonresponsive.
THE COURT: Overruled.
Q. ... What observations did you make to draw that conclusion?
A. They exhibited no grief or feeling of loss.
Q. Did they talk about Baby Glenn's condition and stuff like that?
A. Well, I told them I was very sorry that their baby had died.
Q. No reaction 
A. No reaction.
Q.  other than what you already indicated?
A. Mrs. Tucker explained that Mr. Tucker's grief was on the inside and he didn't show his grief.
1/31/91 Transcript at 63-64.
[3] Pursuant to HRE Rule 702, testimony by "a witness qualified as an expert by knowledge, skill, experience, training, or education" may be allowed "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."
[4] HRE Rule 403 provides:

Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
[1] This amendment reads in pertinent part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb[.]"
[2] The supreme court in Hamala noted:

In Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Supreme Court held that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient...." Id. at 18, 98 S.Ct. at 2150. The Court distinguished between reversal for "trial error" and reversal for "evidentiary insufficiency" and explained that:
[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.
Id. at 15, 98 S.Ct. at 2149. See also United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964) ("[i]t would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction"). The Supreme Court has consistently held that reprosecution following reversal on appeal is constitutionally permissible.
73 Haw. at 293, 834 P.2d at 277 (citations omitted).