

**FILED**

Dec 23 2020, 8:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyre Bradbury, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent* | December 23, 2020 <br><br> Court of Appeals Case No. 20A-PC-620 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Elizabeth C. Hurley, Judge <br><br> Trial Court Cause No. 71D08-1801-PC-2 |

**Weissmann, Judge.**

[1] Tyre Bradbury claims his defense attorneys eased the State's burden of convicting him of murder by stipulating to a disputed element of the crime. Moreover, Bradbury's counsel failed to seek instructions on alternative offenses with lesser sentences. Finding these shortcomings constituted ineffective assistance of counsel, we conclude the post-conviction court erroneously denied Bradbury's request to vacate his convictions. We reverse and remand for further proceedings.

# Facts

[2] Bradbury was fifteen years old when his friend, 19-year-old Robert Griffin, shot and killed a toddler while firing at a rival, L.B.. The bullets missed L.B. but hit two-year-old J.S., who was playing in his yard. Bradbury unsuccessfully tried to stop Griffin from shooting, and a jury convicted Griffin of murder. The State charged Bradbury as an adult with murder as Griffin's accomplice.

[3] During Bradbury's trial, his attorneys stipulated to a major element of the State's case—the fact that the adult shooter had been convicted of murder. By doing so, counsel admitted one of the contested elements of Bradbury's crime. The attorneys also failed to request a jury instruction on the lesser-included offense of reckless homicide as an accomplice.

[4] Bradbury filed a petition for postconviction relief, claiming his counsels' performance on these two issues was deficient and that Bradbury was prejudiced as a result. The post-conviction court denied his petition, finding the

stipulation and the omission of lesser included offenses was strategic and, therefore, not the product of ineffective assistance of counsel.

## Discussion and Decision

Bradbury raises several claims on appeal, but we find two related issues dispositive: whether trial counsel was ineffective in stipulating as to Griffin's murder conviction and in failing to request a jury instruction on a lesser-included offense. To succeed on those claims, Bradbury was required to show: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) the deficiency was so prejudicial as to create a reasonable probability the outcome would have been different absent counsel's errors. *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail, a petitioner must show the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the postconviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). The postconviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the postconviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which

leaves us with a definite and firm conviction that a mistake has been made."
*Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

### *Griffin's Murder Conviction*

[7] To convict Bradbury of murder as an accomplice, the State was required to prove beyond a reasonable doubt that Bradbury, acting with the intent to kill his rival, L.B., knowingly aided, induced, or caused Griffin to commit the crime of murdering toddler J.S. Direct Appeal Appellant's App. Vol. II p. 159.[1] By stipulating to Griffin's murder conviction, trial counsel conceded a major element of the State's case: that Griffin was acting with the requisite intent for murder when the killing occurred. *Brown v. State*, 770 N.E.2d 275, 281 (Ind. 2002) (holding that "conviction of an accomplice requires sufficient proof of the underlying crime").

[8] Trial counsel specifically testified that, absent the stipulation, the State would have had difficulty proving Griffin's requisite intent and that Griffin's murder conviction likely would have been inadmissible. PCR Tr. Vol. IV p. 20. Counsel indicated that he entered into the stipulation because he believed the jury was less likely to convict Bradbury if it knew "justice had been done to the actual shooter." *Id.* The dissent finds counsel engaged in a proper strategy because acknowledging Griffin committed murder demonstrated that the

---

[1] Although there are other ways, per the relevant statutes, to convict someone of murder as an accomplice, this was how the trial court instructed the jury on the charge. *See* Ind. Code §§ 35-42-1-1 (murder), 35-41-2-4 (accomplice liability).

toddler victim's death would not go unpunished. This is problematic for two reasons. First, counsel admitted at the PCR hearing that acknowledging Griffin's intent was not a trial strategy. Moreover, counsel specifically raised the issue of Griffin's intent in a pretrial motion to dismiss, during pretrial hearings, in opening argument, during discussions of instructions, in his motion for a directed verdict, and during closing argument.

[9] We agree with Bradbury that Griffin's intent was as central to Bradbury's prosecution as it was to Griffin's. Griffin claimed both at trial and on appeal that the State did not prove his intent to kill. *Griffin v. State*, No. 71A03-1504-CR-144, *7 (Ind. Ct. App. Oct. 7, 2015). The primary issue in both the Griffin and Bradbury prosecutions was whether Griffin intended to kill his rival, L.B., or just frighten L.B. by recklessly firing in his general direction when the stray bullet from his gun struck toddler J.S. Bradbury's jury was not bound by the verdict of Griffin's jury. Yet, informing Bradbury's jury of that verdict sent the opposite message: another jury had found beyond a reasonable doubt Griffin fired with the intent to kill, so Bradbury's jury must follow suit.

[10] Trial counsel's stipulation to elements of the offense which he thought the State would have had difficulty proving cannot be deemed reasonable. Moreover, the stipulation wholly undercut trial counsel's litigation strategy of establishing Griffin did not act with specific intent to kill.

## Lesser-Included Offenses

[11] Bradbury also claims his attorneys were ineffective for failing to seek lesser alternatives to a murder conviction. According to Bradbury, he would have been entitled to a jury instruction on reckless homicide as an accomplice to Griffin if his counsel had sought it. *See Brown*, 770 N.E.2d at 280-81 (holding that defendant charged with being an accomplice to murder was entitled to jury instruction on reckless homicide where there was "a serious evidentiary dispute" about the culpability of the principal actor).

[12] Counsel did not tender any lesser included offense instructions because he thought the evidence at trial did not support them. However, trial counsel indicated that if such evidence existed, he would have proposed such an instruction and that any failure to do so was error. He specifically testified the decision was not strategic.

[13] But for counsel's stipulation as to Griffin's murder conviction, a serious evidentiary dispute about Bradbury's culpability would have existed. The Record showed Griffin and Bradbury came to the park prepared to face their adversaries. When Bradbury saw Griffin fire in the rivals' general direction, Bradbury yelled for him to stop. As the dissent correctly notes, one witness testified Griffin aimed the gun at L.B. Based on this conflicting evidence from trial, a reasonable juror could have concluded Griffin did not intend to kill his rival, L.B.; instead, Griffin was trying to frighten L.B. by recklessly firing the gun in his general direction. The spray of gunfire killed the toddler, who, by all counts, was an unintended victim. Under such circumstances, Bradbury could

have been convicted as an accomplice to reckless homicide, a lesser offense than murder. Counsel's stipulation that Griffin was convicted of murder effectively foreclosed that defense.

[14] The postconviction court concluded Bradbury's attorneys were not ineffective in failing to request a jury instruction on lesser included offenses because the decision was strategic. We find the evidence does not support this conclusion. Bradbury's counsel specifically testified that he normally seeks as many lesser included offense instructions as the evidence will support, particularly in murder cases. Counsel also made clear that he would have tendered a lesser included offense instruction if the evidence against Bradbury supported it, and any failure to do so in the presence of such evidence was counsel's error. The evidence does not support the post-conviction court's finding that the decision to omit lesser-included offense instructions was strategic.

## Conclusion

[15] Based on the record, we find the performance of Bradbury's attorneys was deficient with respect to the stipulation and omission of lesser included offense instructions and that but for this deficient performance, there was a reasonable probability that the result of the proceeding would have been different. *See Grinstead*, 845 N.E.2d at 1031. Therefore, the postconviction court erred by denying Bradbury's petition for post-conviction relief.[2] Even if these errors

---

[2] Because we find these two issues dispositive, we need not and will not reach Bradbury's other arguments.

were the product of strategic decisions, such egregious errors may be grounds for reversal in a post-conviction action. *See State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997), *cert. denied*, 523 U.S. 1079 (1998).

[16] The judgment of the postconviction court is reversed and this case is remanded for further proceedings.

Bailey, J., concurs.
Vaidik, J., dissents with a separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Tyre Bradbury,
*Appellant-Petitioner,*

v.

State of Indiana,
*Appellee-Respondent*

Court of Appeals Case No.
20A-PC-620

**Vaidik, Judge, dissenting.**

[17] I respectfully dissent from the majority's conclusion Bradbury received ineffective assistance of trial counsel. Because the post-conviction-court judge, who also presided over the jury trial, correctly concluded Bradbury's counsel were not ineffective, I would affirm.

[18] A defendant who files a petition for post-conviction relief must establish the grounds for relief by a preponderance of the evidence. *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014). If the post-conviction court denies relief, and the petitioner appeals, the petitioner must show the evidence leads unerringly

and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 269.

[19] When evaluating a defendant's ineffective-assistance-of-counsel claim, we apply the well-established, two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019). The defendant must prove (1) counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms, and (2) counsel's deficient performance prejudiced the defendant, i.e., but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Id.*

[20] Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018), *reh'g denied*. Charles and Brendan Lahey represented Bradbury in his trial for murder as an accomplice with a gang enhancement. Charles has devoted the majority of his practice to criminal-defense work, and his son Brendan has many years of experience.

[21] To be found guilty, the State had to prove the shooter, Griffin, intended to kill L.B. when he shot at him. But the State also had to prove Bradbury acted with the intent to kill L.B. Over the State's objection and at the request of counsel, and after repeated arguments before and even during trial, the trial court agreed to instruct the jury Bradbury's intent was an essential element of his murder

charge.[3] Ultimately, counsel stipulated Griffin had been convicted of murder. *See* March 28-30, 2016 Trial Tr. Vol. I p. 91. Doing so absolved the State from proving Griffin's intent. As Charles testified at the post-conviction hearing, "The advantage to that was that I did not want the jury sitting there thinking that they had to convict [Bradbury] or everybody might go free, and this child [the unintended victim] died without anybody facing the music." P-C Tr. Vol. IV p. 20. In my opinion, counsel strategically argued Bradbury's intent only. As Charles testified:

> [The shooting] was rogue action by Griffin that [Bradbury] did not contribute to and did not join and did not have any knowledge; if Griffin did have a specific intent that [Bradbury] never had that intent beforehand because for Christ's sake he tried to stop it and the victim said that he did.

*Id.* at 28.

[22] The majority finds counsel's decision to stipulate to Griffin's murder conviction was not reasonable because it "undercut [their] litigation strategy of establishing Griffin did not act with specific intent to kill." Slip op. at 5. My review of the

---

[3] The trial court instructed the jury that to find Bradbury guilty of murder, the State must have proven beyond a reasonable doubt that:
    1) The Defendant, Tyre Bradbury
    2) acting with the intent to kill [L.B.]
    3) knowingly aided or induced or caused
    4) Robert Griffin to commit the crime of Murder
Appellant's Direct Appeal App. Vol. II p. 159.

record does not lead me to the same conclusion, although I admit the record can be read as the majority reads it. Charles seemingly contradicted himself at the post-conviction hearing. He said, as the majority indicates, that absent the stipulation, it "would have been very hard for [the State]" to establish Griffin had been convicted of murder. P-C Tr. Vol. IV p. 20. Further, Charles testified he thought he had argued Griffin's intent at trial, and indeed he argued very limitedly Griffin's intent during closing.[4] However, Charles later said "it was not [his] belief that [he] was going to be successful in arguing the intent of [Griffin]." *Id.* at 22. And Brendan testified they were "hoping" to challenge Griffin's intent with evidence the child may have been killed with "an alternative [bullet] trajectory . . . that could have taken . . . a very high arch in the air," but that theory "didn't really come together after the testimony that the shooter leveled the gun at the . . . intended victim." *Id.* at 59-60. In my opinion, the strategy of counsel was to zero in on the State's failure to prove Bradbury's intent.

[23] Even assuming counsel's strategy was not reasonable, Bradbury's claim still fails. He must prove there is a reasonable probability the result of his trial would have been different. By the time of Bradbury's trial in March 2016, another jury had found Griffin guilty of murder, specifically finding he intended to kill L.B.

---

[4] Counsel argued during closing, "Well, we don't really know anything about the intent of Robert Griffin. That's not something that we know anything about." March 31, 2016 Trial Tr. p. 48

Moreover, the evidence is convincing Griffin fired the gun intending to kill L.B. Four people present at the shooting testified: L.B. and three others. None indicated, as the majority claims, that Griffin only wanted to "frighten L.B. by recklessly firing in his general direction." Slip op. at 5. L.B. testified that when he squared up with M.B., Griffin "pulled the gun out" and "shot." March 28-30, 2016 Trial Tr. Vol. I p. 124. According to L.B., the "bullet went pa[st]" him, and the bullet was so close he "felt" it. *Id.* at 125. L.B. then ran away in a zigzag fashion to avoid getting hit by the bullets. Another eyewitness testified everyone "surrounded" L.B. and then Griffin shot "at" him. *Id.* at 202, 203. Yet another witness said Griffin "open fired," shooting "a lot" of bullets. March 28-30, 2016 Trial Tr. Vol. II p. 254. The final eyewitness claimed to have heard but not seen the shooting. As Brandon testified at the post-conviction hearing, the evidence was not really there to believably contest Griffin's intent. After reviewing this record, that seems right to me. Bradbury has failed to prove there is a reasonable probability arguing Griffin's intent would have made a difference in the verdict.

[24] As to the issue of failing to request a jury instruction on the lesser-included offense of reckless homicide, Bradbury's claim fails as well. Bradbury has not shown the verdict would have been any different had Griffin's intent been at issue. Bradbury bears the burden, and he has failed to show there is a serious evidentiary dispute as to Griffin's intent. Charles acknowledged this reality in his post-conviction testimony when he said they "did not submit an instruction

on lesser included offense because we didn't think that there was any evidence of the lesser included offense." P-C Tr. Vol. IV p. 25.

[25] Requesting lesser-included-offense instructions demands a careful analysis by counsel—a decision we should be reticent to second guess. Here, regarding Griffin's intent, counsel needed to ask themselves: (1) was there enough evidence to credibly argue Griffin did not intend to kill L.B.?; (2) how would this jury respond to that argument?; and (3) would this alternative argument undermine the strength of Bradbury's intent argument that, if accepted by the jury, would have resulted in an acquittal? Decisions like this must be made on the ground, not after the fact.

[26] Reasonable minds differ. And they certainly have here on the issues of whether counsel's decisions were strategic and whether there is a reasonable probability the result of the trial would have been different. Because I believe this to be a reasonable difference of opinion, I cannot say the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. I would defer to the judgment of the post-conviction-court judge, who also presided over Bradbury's jury trial, and affirm on these and the other issues raised by Bradbury.